561 S.E.2d 610

**Linda Dennis BOWERS, Respondent,**

v.

**Gregory S. BOWERS, Appellant.**

**No. 3449.**

Court of Appeals of South Carolina.

Heard Feb. 5, 2002.
Decided Feb. 25, 2002.
Rehearing Denied April 18, 2002.

86

88

J. Falkner Wilkes, of Meglic, Wilkes & Godwin; and Kimberly F. Dunham, both of Greenville, for appellant.

David M. Collins, Jr., of Inman, for respondent.

ANDERSON, Judge:

In this domestic action, Gregory S. Bowers ("Husband") appeals from several aspects of the Family Court's order. We affirm in part, reverse in part, and modify in part.

## FACTS/PROCEDURAL BACKGROUND

Husband and Linda Dennis Bowers ("Wife") were married in December 1991 and separated in the fall of 1997. No children were born to the marriage.

Wife instituted this divorce action against Husband in October 1997. At the time of the final hearing, the issues before the court for disposition included: divorce, alimony, equitable distribution of marital assets, allocation of marital debts, disposition of pending allegations of contempt against Wife, and attorney's fees.

By order dated April 10, 2000, the Family Court awarded Wife a divorce on the ground of adultery, rehabilitative alimony of $1,000 per month for twelve months, and $8,915 in attorney's fees. The judge also identified, valuated, and equitably apportioned the parties' marital property and debts. Specifically, the court:

(1) valued the parties' marital home at $260,000, awarded ownership to Husband, and awarded one-half of the equity ($17,932.03) to Wife;

(2) valued and apportioned the furniture in the marital home;

(3) identified Husband's 401(k) account as marital, valued the asset at $39,395.38, and awarded one-half of the account to Wife;

(4) identified Husband's 10,000 shares of Southern Water Treatment stock as marital property, valued the stock at $50,000, and awarded Wife one-half the value of the asset; and

(5) ordered Husband to repay Wife $20,611 for loans made between the parties' corporations.

To effectuate the award of equitable distribution, the court ordered Husband to pay Wife $70,990.72, payable in three $23,663.57 monthly installments with payments due on May 1, 2000, June 1, 2000, and July 1, 2000. The court additionally ordered Husband to pay Wife $8,915.00 in reasonable attorney's fees, payable in three $2,971.67 monthly installments with payments due on April 1, 2000, May 1, 2000, and June 1, 2000.

Husband appeals the Family Court's: (1) inclusion of cash disbursements in the court's scheme of equitable distribution; (2) valuation of several marital assets; (3) failure to consider tax consequences in arriving at its award of equitable distribution; (4) identification of marital debts; and (5) award of attorney's fees.

### STANDARD OF REVIEW

On appeal from the Family Court, this Court has jurisdiction to find the facts in accordance with its view of the preponderance of the evidence. *Murdock v. Murdock*, 338 S.C. 322, 526 S.E.2d 241 (Ct.App.1999). This tribunal, however, is not required to disregard the Family Court's findings. *Badeaux v. Davis*, 337 S.C. 195, 522 S.E.2d 835 (Ct.App.1999). Likewise, we are not obligated to ignore the fact the Family Court judge, who saw and heard the witnesses, was in a better position to evaluate their testimony. *Smith v. Smith*, 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997); *see also Dorchester County Dep't of Soc. Servs. v. Miller*, 324 S.C. 445, 477 S.E.2d 476 (Ct.App.1996) (ruling that because the appellate court lacks the opportunity for direct observation of witnesses, it should accord great deference to the Family Court's findings where matters of credibility are involved); *Terwilliger v. Terwilliger*, 298 S.C. 144, 378 S.E.2d 609 (Ct.App.1989) (holding the resolution of questions regarding credibility and the weight given to testimony is a function of the Family Court judge who heard the testimony).

### LAW/ANALYSIS

#### I. Valuation of the Marital Home

Husband asserts the Family Court's valuation of the marital home is not supported by the evidence. We agree.

In arriving at its valuation of the parties' marital home, the Family Court noted the parties listed the home for sale at $252,500 and that a contemporaneous appraisal assigned the same value to the home. The court further noted Wife valued the home at $265,000 on her marital assets sheet. In ultimately valuing the home at $260,000, the Family Court took "judicial notice of the increase of the value of homes in Greenville County, particularly on the eastside of Greenville County where this property is located." This was error.

We agree with Husband that Wife's valuation of the marital home was so unsubstantiated as to be useless for purposes of assigning a value for equitable distribution. Wife offered no credible explanation of her $265,000 estimate of the home's value. Her failure in this regard is particularly telling since the home failed to sell at a $252,500 listing price. In fact, Wife admitted her valuation of the home was "a guesstimate based on just some conversation I had with Prudential Company. But they would not, again, give me a firm answer."

As a general principle, a landowner, who is familiar with her property and its value, is allowed to give her estimate as to the value of the land and damages thereto, even though she is not an expert. *Seaboard Coast Line R.R. v. Harrelson*, 262 S.C. 43, 202 S.E.2d 4 (1974). However,

> [s]econd hand testimony of a "ball park figure" given by some unidentified (and not necessarily knowledgeable or reliable) "real estate agent" as to what he "thought" the property could be sold for, would obviously be entitled to small weight, if competent at all. There is no presumption that a person is competent to give his opinion as to the value of real property. His competency must be shown. *City of Spartanburg v. Laprinakos*, 267 S.C. 589, 230 S.E.2d 443 (1976). If the person is someone other than the owner of the property, the source of his knowledge must be revealed to remove his opinion from the realm of mere conjecture. A bare declaration of his knowledge of the value of the property is insufficient. [*Id.*]

*Rogers v. Rogers*, 280 S.C. 205, 209, 311 S.E.2d 743, 745–746 (Ct.App.1984).

Here, Wife's valuation was clearly not based on any personal knowledge she possessed regarding the true value of the

home. Rather, the value she assigned was admittedly bottomed and premised entirely upon the unsupported and unsubstantiated advice of an unknown third party. There being nothing to take Wife's parroting of an unknown third party's valuation of the home out of the realm of pure speculation, we hold the Family Court erred in assigning any weight to the valuation.

■ Moreover, we hold the court's act of taking "judicial notice" of increased property values in the area where the parties' home was located was highly improper.

Rule 201, SCRE, which governs the taking of judicial notice of adjudicative facts, provides:

(a) **Scope of Rule.** This rule governs only judicial notice of adjudicative facts.

(b) **Kinds of Facts.** A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) **When Discretionary.** A court may take judicial notice, whether requested or not.

(d) **When Mandatory.** A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) **Opportunity to Be Heard.** A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) **Time of Taking Notice.** Judicial notice may be taken at any stage of the proceeding.

(g) **Instructing Jury.** The court shall instruct the jury to accept as conclusive any fact judicially noticed.

*See also* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 201App.01[2] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2001) (stating subsec-

tion (e) of Fed.R.Evid. 201 is a useful safeguard to protect a party's right to be heard in matters relating to judicial notice).

 Furthermore,

> [a] trial court may take judicial notice of a fact only if sufficient notoriety attaches to the fact involved as to make it proper to assume its existence without proof. *Moss v. Aetna Life Ins. Co.,* 267 S.C. 370, 228 S.E.2d 108 (1976). A fact is not subject to judicial notice unless the fact is either of such common knowledge that it is accepted by the general public without qualification or contention, or its accuracy may be ascertained by reference to readily available sources of indisputable reliability. *Masters v. Rodgers Dev. Group,* 283 S.C. 251, 321 S.E.2d 194 (Ct.App.1984).

*Eadie v. H.A. Sack Co.,* 322 S.C. 164, 171–172, 470 S.E.2d 397, 401 (Ct.App.1996).

Here, the valuation of the marital residence, or any appreciation therein, was one of the primary issues in dispute. Any finding concerning the value of the home, particularly a valuation outside the realm of competent evidence offered at trial, required proof. The record is completely devoid of any such proof. There exists no competent evidence in the record establishing even a range by which such homes generally appreciated during the time period relevant to this case, let alone by how much the parties' home would have appreciated. We reject the application of the doctrine of judicial notice to valuations of marital residence.

Based on our own review of the competent evidence in the record before us, we reverse the Family Court's valuation of the marital home and modify the court's order by assigning a value of $252,500 to the home.

## II. Cash Disbursements

 Husband contends the Family Court erred in ordering him to make three equal monthly cash disbursements to Wife in realization of her share in the marital estate without first considering the economic impact on his ability to meet this financial obligation. While we question the reasonableness of this scheme of equitable distribution given the amount owing from Husband to Wife pursuant to the award of equitable distribution, we decline to reverse the Family Court on

this issue. Husband has, at the very least, been on notice of the provisions of the Family Court's final order during the pendency of this appeal and therefore has had ample time to make financial preparations for payment to Wife. We are particularly convinced Husband is able to make the cash disbursements as ordered by the Family Court in light of his testimony that his $10,000 per month salary from his company is the result of a self-imposed pay-scale. Accordingly, we decline to reverse the Family Court's order regarding the cash disbursements.

### III. Valuation of Southern Water Treatment Stock

Husband argues the Family Court erred in valuing his shares of Southern Water Treatment stock at $50,000 based on the share price Husband paid during a stock repurchase that occurred in 1999, well after the date marital litigation was commenced. We find no error.

Subject to limited exceptions not applicable to the facts of this case, "marital property" includes "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ...." S.C.Code Ann. § 20–7–473 (Supp.2001). Generally, for purposes of equitable distribution, the value of marital property is the value of the property at the time of the commencement of the marital litigation. *See Mallett v. Mallett*, 323 S.C. 141, 151, 473 S.E.2d 804, 810 (Ct.App.1996) ("Marital property is valued as of the date of the filing of the complaint.") (citations omitted); *Jamar v. Jamar*, 308 S.C. 265, 267, 417 S.E.2d 615, 616 (Ct.App.1992) ("The proper date to value marital property is the time the marital litigation is filed or commenced.") (citation omitted).

Initially, we note we disagree with Husband's allegation the Family Court failed to assign a value to the marital portion of his stock in Southern Water Treatment as of the date marital litigation was commenced. In support of this contention, Husband points out the Family Court's reference to a 1999 stock repurchase agreement by which Husband purchased 10,000 shares of stock for $50,000. We note, however, the court also referred to Husband's own financial declarations

submitted to his bank, wherein he valued his total stock in Southern Water Treatment at $4,000,000 at the time of the marriage and $6,000,000 at time marital litigation was commenced. The court declined to value Husband's stock based solely on the documentation he submitted to his bank in recognition that "overvaluation" or "puffing" is often present in financial statements given to financial institutions for purposes of obtaining loans. Our reading of the order convinces us that rather than simply valuing the marital portion of Husband's Southern Water Treatment stock as of the date of the stock repurchase in 1999, the Family Court considered that figure and other evidence in an attempt to arrive at a fair evaluation of the value of the marital stock as of the date of filing.

Moreover, we find no abuse of discretion in the Family Court's refusal to adopt the valuation of the stock offered in deposition by Dr. Charles L. Alford, III, an expert in the field of evaluating businesses. Dr. Alford opined the marital portion of Husband's stock was worth very little at the time marital litigation was commenced, but admitted his valuation was "just based on book value." See Santee Oil Co. v. Cox, 265 S.C. 270, 273–74, 217 S.E.2d 789, 791 (1975) (holding that for the purpose of a judicial valuation of shares, "the trial court must undertake to compute the fair value by establishing 'the fair market value of the corporate property as an established and going business,'" and determining three factors should ordinarily be considered in a stock valuation case: (1) net asset value; (2) market value; and (3) the earnings or investment value of the dissenting stock) (citation omitted); Belk of Spartanburg, S.C., Inc. v. Thompson, 337 S.C. 109, 522 S.E.2d 357 (Ct.App.1999) (holding the significance of an appraisal that did not take Santee factors into account must be discounted).

Of the evidence presented to the trial court, we find the 1999 stock purchase agreement most probative of the value of the marital portion of Husband's business at the time of filing. We are convinced this value is more accurate than that presented by Husband's expert at trial, who offered a value that did not account for the business as an ongoing concern. We also find particularly compelling Husband's admission on appeal, as well as his expert's testimony at trial, that the value

of the business did not increase after the date marital litigation was commenced.

Accordingly, we affirm the Family Court's valuation of the martial portion of Husband's Southern Water Treatment stock.

## IV. Valuation and Distribution of Husband's 401(k) Account

Husband asserts the Family Court erred in assigning his 401(k) account a value of $39,395.30—the account's face value at the time marital litigation was commenced—because the account was used to secure a loan with an outstanding balance of $8,450.39. Husband further asserts the Family Court erred in apportioning this asset without considering the tax consequences of a forced liquidation. We find no error.

The apportionment of marital property is within the Family Court judge's discretion and will not be disturbed on appeal absent an abuse of discretion. *Bungener v. Bungener*, 291 S.C. 247, 353 S.E.2d 147 (Ct.App.1987). Section 20–7–472 lists fifteen factors for the Family Court to consider when making an equitable apportionment of the marital estate. The statute vests the Family Court with the discretion to decide what weight should be assigned to the various factors. On review, this Court looks to the overall fairness of the apportionment, and if the result is equitable, that this Court might have weighed specific factors differently than the Family Court is irrelevant. *Johnson v. Johnson*, 296 S.C. 289, 372 S.E.2d 107 (Ct.App.1988).

Here, the Family Court correctly apportioned both marital assets and debts among the parties. In so doing, the court appropriately treated the 401(k) account as an asset, which the court apportioned equally between the parties, and the outstanding balance on the loan as a debt, which the court apportioned to Husband. In light of this treatment, and because we can discern no unfairness resulting to Husband, we find no error in the court's assignment of face-value to the 401(k) account.

We further find no error in the Family Court's failure to expressly consider tax consequences resulting from

its award to Wife of one-half the value of Husband's 401(k) account. Where an order of equitable apportionment does not contemplate the liquidation or sale of an asset, it is an abuse of discretion for the court to consider the tax consequences from a supposed sale or liquidation. *Ellerbe v. Ellerbe*, 323 S.C. 283, 473 S.E.2d 881 (Ct.App.1996). Here, the court's order does not require or contemplate liquidation of Husband's 401(k) account and there is no evidence indicating either party anticipated liquidation of the account.

## V. Loans as Debts

Husband avers the Family Court erred in considering loans among the parties' respective corporations as marital debts. This position is untenable because Husband did not object to the treatment of the loans as marital debt at trial and, in fact, attempted to show Wife was indebted to him for loans his company made to her company. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.") (citations omitted). Moreover, to the extent Husband's argument concerning this issue amounts to a challenge that the Family Court erred in accepting the testimony of Wife regarding the amount of outstanding loan debt owing from Husband, we defer to the Family Court's findings as to credibility. *See Cherry v. Thomasson*, 276 S.C. 524, 280 S.E.2d 541 (1981) (holding an appellate court is not required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony).

## VI. Attorney's Fees

Husband maintains the Family Court failed to make requisite findings of fact relevant to its award of attorney's fees to Wife. We disagree.

Rule 26(a) of the South Carolina Rules of Family Court requires the court to "set forth the specific findings of fact and conclusions of law to support the court's decision." However, not every violation of Rule 26(a) requires reversal:

"[W]hen an order from the family court is issued in violation of Rule 26(a), SCRFC, the appellate court 'may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" *Griffith v. Griffith*, 332 S.C. 630, 646–47, 506 S.E.2d 526, 535 (Ct.App.1998) (quoting *Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991)). Here, the record on appeal is sufficient for this Court to make necessary findings of fact relating to the award of attorney's fees. Specifically, the record contains the wife's attorney fee affidavit.

An award of attorney's fees will not be overturned absent an abuse of discretion. *Stevenson v. Stevenson*, 295 S.C. 412, 368 S.E.2d 901 (1988). Before awarding attorney's fees, the Family Court should consider: (1) each party's ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties' respective financial conditions; and (4) the effect of the attorney's fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 415 S.E.2d 812 (1992); *Heins v. Heins*, 344 S.C. 146, 543 S.E.2d 224 (Ct.App.2001). In determining the amount of attorney's fees to award, the court should consider: (1) the nature, extent, and difficulty of the services rendered; (2) the time necessarily devoted to the case; (3) counsel's professional standing; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991); *Shirley v. Shirley*, 342 S.C. 324, 536 S.E.2d 427 (Ct.App.2000).

Having reviewed the award of attorney's fees in light of the applicable factors—particularly the beneficial results obtained by Wife's counsel regarding equitable distribution and the inherent difficulty attendant to this case given the controversy surrounding the valuation of major marital assets—we find no abuse of discretion in the award.

## CONCLUSION

Husband shall remit a total of $76,155.72 to Wife.[1] This amount reflects a $7,500 reduction in the equity calculation of

---

1. This sum was calculated as follows:

the couple's marital home due to this Court's reversal and modification of the Family Court's valuation of the home.[2] Husband shall pay this award to Wife in three consecutive monthly installments of $25,385.24. Payment shall be made on the following dates: May 1, 2002, June 1, 2002, and July 1, 2002.

Upon Husband's payment of the amount owed to Wife, Wife shall execute a fee simple warranty deed to Defendant for her one-half interest in the couple's marital home.

For the foregoing reasons, the decision of the Family Court is

**AFFIRMED IN PART, REVERSED IN PART, AND MODIFIED IN PART.**

CURETON and GOOLSBY, JJ., concur.

---

$14,182.03 (50% of the equity in the couple's marital home)
5,500.00 (value of Wife's share of home furnishings)
19,697.69 (50% of face value of Husband's 401K)
25,000.00 (50% of value of Southern Water Treatment shares)
20,611.00 (amount of Wife's overpayment of loans)
8,915.00 (reasonable attorney's fees)

---

$93,905.72 Sub–Total Amount Due to Wife
–16,500.00 (Wife's obligation for Carolina First credit line debt)
1,250.00 (Wife's obligation for Husband's attorney's fees for contempt action)

---

$76,155.72 Total Amount Due to Wife

2. The modified equity of the couple's family home was calculated as follows:

$252,500.00 (Court of Appeals' valuation of the home)
–224,135.95 (Amount of first and second mortgages at the time of filing = $189,689.65 + 34,446.30)

---

$ 28,364.05 Total equity
Wife's share is 50% of the $28,364.05 total equity = $14,182.03.