PER CURIAM: Charles Dillman, as personal representative of the Estate of 
Kenneth Lew Dillman, appeals numerous equitable dist

THIS OPINION 
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT 
 IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Cheryl Moyer Dillman,       
Respondent,
 
 
 

v.

 
 
 
Mitchell Foy Dillman, personal representative for the Estate of Kenneth 
 Lew Dillman,        Appellant.
 
 
 

Appeal From Beaufort County
Alvin D. Johnson, Family Court Judge

Unpublished Opinion No. 2004-UP-322
Heard March 11, 2004  Filed May 14, 
 2004

AFFIRMED IN PART, REVERSED IN PART,
 AND REMANDED

 
 
 
John S. Nichols, of Columbia and William Randall Phipps, of 
 Hilton Head Island, for Appellant.  
Patrick James Thomas Kelley, of Bluffton, for Respondent.
 
 
 

PER CURIAM:  In this domestic action, Mitchell 
 Foy Dillman (Estate), as personal representative of the Estate of Kenneth Lew 
 Dillman (Husband) [1] , alleges 
 numerous errors in the family courts order on equitable distribution, the alimony 
 award, and attorneys fee award in favor of Cheryl Moyer Dillman (Wife).  We 
 affirm in part, reverse in part, and remand.  
FACTS
Husband and Wife were married in Switzerland on 
 October 8, 1989, and were remarried three days later in the United States.  
 Prior to their marriage, they purchased a lot on Hilton Head Island.  The deed 
 conveyed a two-thirds interest to Wife and the remaining one-third to Husband.  
 They later built a house on this lot and Wife paid $364,000 of the $443,000 
 total cost of the land and construction.  In February 1993, Wife conveyed one-sixth 
 of her interest to Husband, thereby vesting each with an undivided one-half 
 interest in the property.  
In December 1991, Wife loaned Husband money taken 
 from her life insurance policies and funds from her investment account.  Husband 
 used the funds to satisfy outstanding mortgages on two quad lots in an apartment 
 complex he owned in Hinesville, Georgia (Hinesville Apartments). [2]   Wife received notes and mortgages 
 on the two lots as security for the loan.  Both parties agreed Husband had significantly 
 paid down the notes at the time of trial but disagreed as to the remaining balance 
 due.  
Early in 1994, Husband borrowed a substantial sum 
 from a bank, which he secured by a mortgage encumbering the couples Hilton 
 Head Island home.  He used approximately two-thirds of the proceeds of the loan 
 to satisfy mortgages on five more quad lots at his Hinesville Apartments, and 
 deposited the remaining amount into his personal securities account.  By the 
 time of the final hearing in family court, Husband had repaid the entire amount 
 due on this loan.  
In September 1995, Wife loaned Husband $30,000 from 
 her Merrill Lynch checking account.  Husband combined these loan proceeds with 
 personal funds to purchase a lot in Sun City, Hilton Head, in March 1996.  Both 
 parties testified Husband repaid at least $15,730 of the loan just prior to 
 purchasing the property.  
In June 1999, Wife became suspicious that Husband was 
 having an extramarital affair after discovering notes written to him by a woman 
 the couple had met while vacationing in France.  Husband had taken a trip without 
 Wife at the time and place discussed in the notes.  Upon his return, Wife discovered 
 a used prophylactic in the garbage.  Husband denied he and the woman traveled 
 together and claimed he shared his hotel room with a gentleman he met on the 
 tennis courts.  Wife testified Husbands extramarital affair was the cause of 
 the breakup of their marriage, but Husband claimed the marriage had broken down 
 prior to his involvement with the other woman.  
In September 1999, Wife brought this action for divorce, 
 seeking equitable distribution of marital property, separate maintenance and 
 support, and attorneys fees.  Both parties requested their antenuptial agreement 
 be recognized for purposes of equitable distribution. 
 [3]   However, after reviewing the agreement, the family court ruled the 
 agreement was void, a ruling neither party appealed.  The court bifurcated the 
 trial, granting Wife a divorce, and reserving all other issues for a later hearing.  
 At that hearing, the court divided the marital assets, awarded Wife alimony 
 of $1,000 per month, issued a mutual restraining order, and required Husband 
 to pay $20,000 of Wifes attorneys fees.  The order permitted a termination 
 of alimony only in the event of Wifes death or remarriage, not providing for 
 the eventuality of Husbands death.
SCOPE 
 OF REVIEW
When reviewing 
 an appeal from the family court, we have the authority to find facts in accordance 
 with our own view of the preponderance of the evidence.  We are not, however, 
 required to disregard the findings of the judge, who saw and heard the witnesses 
 and was in a better position to evaluate their credibility and assign comparative 
 weight to their testimony.  Widman v. Widman, 348 S.C. 97, 109-110, 557 
 S.E.2d 693, 699-700 (Ct. App. 2001) (internal citations omitted).
LAW/ANALYSIS
I.  Equitable 
 Distribution Issues
A.  Failure to Consider Statutory Factors
The estate asserts several errors 
 regarding the family courts findings and rulings on equitable distribution, 
 among them contending the court failed to weigh the various factors contained 
 in the statute [4] by failing 
 to consider the existence of an antenuptial agreement and essentially ignoring 
 the manner in which the parties conducted their financial affairs during the 
 marriage.  We disagree.  
The statute lists the factors the family 
 court must consider when making an equitable distribution award and vests the 
 court with the discretion to determine the weight to be assigned each factor.  
 S.C. Code Ann. § 20-7-472 (Supp. 2003).  Contrary to the estates allegations, 
 we find the court adequately considered the relevant factors and addressed them 
 sufficiently in the final order so that this court is able to conclude it was 
 fully cognizant of them.  See Jenkins v. Jenkins, 345 S.C. 88, 
 100, 545 S.E.2d 531, 537 (Ct. App. 2001) (citing Doe v. Doe, 324 S.C. 
 492, 502, 478 S.E.2d 854, 859 (Ct. App. 1996)).  As an appellate function, this 
 court looks to the overall fairness of the apportionment, and if the result 
 is equitable, taken as a whole, that this court might have weighed specific 
 factors differently than the family court is irrelevant.  Bowers v. Bowers, 
 349 S.C. 85, 97, 561 S.E.2d 610, 616 (Ct. App. 2002).  
As to the antenuptial agreement, while it may provide 
 evidence of the intention of the parties initially, it is not controlling because 
 the prior order of the family court declared it void and there has been no appeal 
 of that ruling.  Greenville County v. Kenwood Enters., Inc., 353 S.C. 
 157, 173, 577 S.E.2d 428, 436 (2003) (holding any unappealed portion of the 
 trial courts judgment is the law of the case and must therefore be affirmed).  

B.  Marital Fault
The estate further complains the court erred 
 by concluding Husbands involvement with another woman contributed to the breakup 
 of the marriage and in considering such when making its award.  We disagree.  

The estate does not challenge the courts 
 conclusion that Husband was involved with another woman, but rather argues the 
 marriage was irretrievably broken prior to any involvement.  The evidence, however, 
 amply demonstrates Husband was corresponding with and secretly meeting the other 
 woman prior to the parties divorce, and Wife testified that Husbands infidelity 
 contributed to the breakup of the marriage.  The family court found that Husbands 
 explanations for his behavior lacked credibility.  Accordingly, the court appropriately 
 considered Husbands fault in its final order.  S.C. Code § 20-7-472(2).  

C.  Marital Home
The estate complains the court erred by awarding Husband 
 only a 20 percent interest in the marital home, arguing the court devalued his 
 sweat equity and in-kind contributions made pursuant to a 5-year plan he alleges 
 existed.  We disagree.
The court found Wife directly contributed 
 a significantly greater portion of the cost of the house and land, Husbands 
 direct contribution was minimal, and the parties indirect contributions were 
 essentially equal.  The estate asserts the court failed to properly weigh Husbands 
 efforts as general contractor during construction and, later, his responsibilities 
 of running the household.  Husband relied heavily on a so-called 5-year plan 
 contained in a document which Wife denied ever agreeing to.  We discern no abuse 
 of discretion in the courts decision concerning the marital home.  Ball 
 v. Ball, 314 S.C. 445, 448, 445 S.E.2d 449, 451 (1994) (the family court 
 has wide discretion in determining the contributions made by each spouse to 
 the marital estate).  
The estate also complains about various other 
 provisions of the court order relating to the marital home, including the value 
 placed on it by the court allowing a 7 percent reduction in its valuation in 
 the event Wife chose to buy Husbands interest, in requiring a public auction 
 in the event the parties could not agree to sell the house on the open market, 
 and in making Wife responsible for any mortgage payment when there was none.  
 The appraisal the court accepted was the one prepared closest to the date of 
 the filing of the pleadings, and because a private sale would involve a real 
 estate commission, it was not erroneous for the court to authorize a reduction 
 in the appraisal by a reasonable real estate commission if Wife chose to buy 
 Husbands interest.  The courts order on these points was well within its discretion.  
 S.C. Code Ann. § 20-7-476 (Supp. 2003) (The court in making an equitable apportionment 
 may order the public or private sale of all or any portion of marital property 
 upon terms it determines.).  
D.  Treatment of Other Assets
The estate asserts the family court erred 
 in identifying two units at Cotton Hope Plantation, a lot in Sun City, and Husbands 
 Merrill Lynch and AmeriTrade accounts as marital assets.  We disagree.  
The estate initially argues Husband provided 
 almost all the funds for the purchase of the units in Cotton Hope Plantation 
 and the lot in Sun City.  However, these were assets acquired during the course 
 of the marriage and are therefore considered to be marital property which, by 
 definition, includes all real and personal property which has been acquired 
 by the parties during the marriage and which is owned as of the date of filing 
 or commencement of marital litigation.  S.C. Code Ann. § 20-7-473 (Supp. 2003).  
 No question of transmutation exists with regard to these assets because they 
 were not owned by Husband prior to the marriage.  Additionally, there is considerable 
 credible evidence these assets were acquired with substantial funds of both 
 parties which were commingled.  Also, the AmeriTrade account was opened during 
 the course of the marriage and was funded by the Merrill Lynch account which, 
 as discussed below, was transmuted into marital property.  Consequently, it 
 is also a marital asset subject to apportionment by the family court.
Husband did open the Merrill Lynch account 
 prior to the marriage.  However, there was evidence that during the course of 
 the marriage Husband made several principal contributions from the parties 
 joint funds.  There was also testimony that Husband deposited monies from the 
 building account maintained by the parties for the marital residence into the 
 Merrill Lynch account.  Husband offered no record of deposits and disbursements 
 for this account.  We therefore conclude there was evidence of significant commingling 
 of marital funds unto this account and, as a result, the account was transmuted 
 into a marital asset subject to apportionment.  See Hussey v. Hussey, 
 280 S.C. 418, 423, 312 S.E.2d 267, 270 (Ct. App. 1984) (holding nonmarital property 
 can become transmuted into marital property when it becomes so commingled as 
 to be untraceable).  
II.  Transmutation 
 of Hinesville Apartments
The estate argues the family court erred 
 by holding the totality of Husbands Hinesville Apartments had been transmuted 
 into marital property and by granting Wife a 30 percent equity interest therein.  
 We agree.
Husband acquired the Hinesville Apartments prior to 
 the marriage.  In December 1991, Wife borrowed $158,000 against her life insurance 
 policies and loaned the proceeds plus a check drawn on her Merrill Lynch account 
 for $7,750 to Husband.  Husband used the $165,750 to satisfy outstanding mortgages 
 only on quad lots 7 and 9.  Husband executed two $82,875 promissory notes with 
 mortgages on those two quads in favor of Wife as security for the loan.  Each 
 note had a variable rate calculated to be one percent above the rate paid by 
 Wife.  Husband claimed he paid down the notes to a balance of $81,587 as of 
 March 1, 2001 and was current with his payments.  At trial, Wife agreed Husband 
 was current with his payments at the time, but testified he had previously been 
 behind and late charges accrued increasing the total outstanding balance on 
 the notes to $97,485.26 as of December 6, 2002.  
Husband also executed a note for $203,000 secured 
 by the parties Hilton Head Island home and used $176,457.94 of the loan proceeds 
 to satisfy mortgages on quad lots 3, 4, 5, 6 and 8.  He deposited the remaining 
 amount into his Merrill Lynch securities account.  Husband repaid the entire 
 amount due under the note as of the date of the final hearing.  
Nonmarital property may be transmuted only if it 
 is utilized in support of the marriage, becomes so commingled as to be untraceable, 
 or is utilized in such a manner as to evidence intent to make it marital.  Wyatt 
 v. Wyatt, 293 S.C. 495, 497, 361 S.E.2d 777, 779 (Ct. App. 1987).  None 
 of these requirements exist with regard to Husbands Hinesville properties.  
 Husband held the properties solely in his own name, and the income was paid 
 exclusively to him.  The funds utilized by Husband to pay the existing mortgages 
 were acquired in arms-length transactions evidenced by notes and secured by 
 mortgages.  The loan secured by a mortgage on the marital residence had been 
 fully repaid at the time of the final hearing.  Wifes own testimony was to 
 the effect that she would not have loaned Husband the money to satisfy the existing 
 mortgage had she not received security for her loan.  The evidence is that Husband 
 made regular payments pursuant to the terms of the note.  There is no evidence 
 either party intended at the time of that transaction to transmute the apartments 
 into marital property.  We therefore reverse the portions of the family courts 
 order holding the apartments have been transmuted and equitably dividing them.  
 We also reverse the portion of the order requiring sale of the properties and 
 forgiveness of the balance of the debt to Wife secured by the properties.  The 
 estate remains liable for the outstanding balance due on the note.  Because 
 the parties disagree as to the remaining balance, this issue is remanded to 
 the family court to determine the exact amount due.
III.  Alimony
The estate complains of numerous errors in 
 the family courts order on the subject of alimony.  Most significantly, it 
 asserts the court erred by failing to order alimony payments to cease at Husbands 
 death.  We agree this omission was error.           
S.C. Code 
 Ann. § 20-3-130 (B)(1) (Supp. 2003) requires that periodic alimony terminate 
 on the remarriage of the supported spouse or upon the death of either spouse.  
 As Husband has died, Wife is not entitled to any further alimony.
IV.  
 Attorneys Fees
The estate 
 contends the family court erred by ordering Husband to contribute $20,000 towards 
 Wifes attorneys fees.  We disagree.
The estate 
 argues that we should reverse the family courts award of attorneys fees to 
 Wife if we conclude Husband is successful in his appeal.  The court will reverse 
 the award of attorneys fees where the substantive results achieved by a partys 
 counsel are reversed on appeal.  See, e.g., E.D.M. v. T.A.M., 
 307 S.C. 471, 477, 415 S.E.2d 812, 816 (1992).  In this case, we affirm a majority 
 of the family courts order and reverse only as to the transmutation and apportionment 
 of the Hinesville Apartments and require the termination of alimony in accordance 
 with statutory authority.  The remainder of the order accrues to the benefit 
 of Wife.  Accordingly, we find the award of fees to her was proper.
CONCLUSION
We reverse those portions of the family courts order transmuting 
 and apportioning Husbands Hinesville apartments, require his estate to satisfy 
 the remaining balance due on the notes on quads 7 and 9, and remand for the 
 court to determine the correct amount.  We also find Wife is no longer entitled 
 to alimony.  We affirm the family courts order as to the remaining issues.
 AFFIRMED IN PART, REVERSED IN PART, AND 
 REMANDED.  
HUFF and STILWELL, JJ., and CURETON, A.J., 
 concur.

 
 
 [1]        Husband died during the pendency of this appeal.  His son, 
 Mitchell Foy Dillman, was named personal representative of his estate.

 
 
 [2]        Prior to the marriage, Husband acquired 7 individual quads 
 (freestanding rental units each containing four apartments) and five townhouses 
 (all located on a single lot) in Hinesville, Georgia.  The quads are identified 
 as lots 3 through 9, and the townhouses are identified collectively as lot 
 10.  

 
 
 [3]        Because both parties already had considerable assets they 
 entered into an agreement approximately one month before the marriage stating 
 their intentions that their respective children, rather than one another, 
 should receive their premarital holdings.  

 
 
 [4]        S.C. Code Ann. § 20-7-472 (Supp. 2003).