THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD 
 NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED 
 BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
Vickie F. Myers,       
Respondent,
 
 
 
 

v.

 
 
 
 
Christopher Carlton Cosgrove,       
Appellant.
 
 
 
 

Appeal From Greenville County
Robert N. Jenkins, Sr., Family Court 
 Judge

Unpublished Opinion No. 2004-UP-640
Submitted November 1, 2004  Filed December 
 20, 2004

AFFIRMED IN PART, REVERSED IN PART, 
 AND REMANDED

 
 
 
Maggi Fields Bailey, of Greenville, for Appellant.
Jefferson G. Wood and E. Kimberly Berry, both of Greenville,
for Respondent. 

 
 
 

PER CURIAM:  In this action for child support, a father appeals an 
 award of both retroactive and prospective child support and attorneys fees 
 to the mother.  We affirm in part, reverse in part, and remand. [1] 
FACTS
Vickie F. Myers (Mother) and Christopher 
 C. Cosgrove (Father) dated and cohabitated intermittently from July 1997 until 
 July 1999.  In November 1998, the couple had a child.  Mother brought 
 this action on May 2, 2001, pursuant to section 20-7-420 of the South Carolina 
 Code (Supp. 2003), seeking custody of the minor child, child support, retroactive 
 child support, and attorneys fees.    
In a temporary order, the family court ordered 
 a paternity test.  If the paternity test was positive, Father was ordered to 
 pay the costs of the test and child support retroactively from the date the 
 action was filed.  The test results, which were positive, were mailed to both 
 parties on August 16, 2001; however, Father denies having any knowledge of the 
 results until January 2002.  Also in January 2002, the case was administratively 
 stricken from the active trial docket pursuant to the 270 day rule.
In an order dated September 27, 2002, the court 
 denied Mothers first motion to restore the action, in part because discovery 
 was not complete.  This was due largely to Fathers failure to cooperate with 
 Mothers discovery requests.  The court gave Mother leave to file another motion 
 to restore when discovery was complete.  The court granted mothers second motion 
 to restore the action as well as a contemporaneous motion to amend the pleadings.  
 The motion to amend sought to include a request for Father to carry life insurance 
 for the benefit of their child.  The court also found Father waived the mediation 
 requirement by his refusal to participate.    
At the final hearing, Mother testified she is currently 
 employed as a legal assistant with a reported gross monthly income of $2,150. 
 Health insurance expenses each month for the minor child are $120.  Daycare 
 initially cost $303 per month but at the time of the final hearing cost approximately 
 $275 per month.  Mother also has custody of a seven-year-old son from a previous 
 relationship for which she receives no child support.                                               

Father testified he is a part-time tattoo artist 
 apprentice with a monthly income of $600. He has completed three and a half 
 years of a five-year apprenticeship.  He is thirty-two years of age and 
 in good health.  He reported living expenses of $810.87, including $237 per 
 month child support for another child.  Father, however, receives periodic gifts 
 of cash from his mother, who also pays for the mortgage on his residence, which 
 they jointly own.  He has not filed a tax return for the last five years.  When 
 asked why he did not file tax returns, he responded, Im making six hundred 
 dollars ($600) a month. And I do not owe the IRS any monies. You do not have 
 to file your income tax if you do not owe any money.       
 The family court found Father to be the childs 
 biological father, gave custody to Mother, awarded her child support of $589 
 per month, and required Father to pay retroactive child support from the date 
 of the initial filing.  The court ordered that back child support be paid in 
 two lump sum payments and ordered   Father to pay $7,500 of Mothers attorneys 
 fees and costs.  This appeal followed.
STANDARD OF REVIEW
In appeals from the family court, this court has 
 authority to find the facts in accordance with our own view of the preponderance 
 of the evidence. Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 
 154, 157 (1996).  This broad scope of review, however, does not require us to 
 disregard the findings of the family court.  Stevenson v. Stevenson, 
 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  We are mindful that the family 
 court, who saw and heard the witnesses, was in a better position to evaluate 
 their credibility and assign comparative weight to their testimony.  Bowers 
 v. Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002).
LAW/ ANALYSIS
I. Child Support
Father claims the family court erred 
 in awarding Mother child support of $589 per month based upon an imputed income 
 of $2,929 per month.  We disagree.
The amount of a child support award is 
 within the sound discretion of the family court and will not be disturbed on 
 appeal absent an abuse of discretion.  Smith v. Smith, 264 S.C. 
 624, 628, 216 S.E.2d 541, 543 (1975).  In determining the amount of child support, 
 crucial factors include: the needs of the children; the incomes, earning capacities 
 and assets of the parents; and the health, ages, general physical condition, 
 and living expenses of the parents.  Bradley v. Bradley, 285 S.C. 
 170, 172-73, 328 S.E.2d 647, 648 (Ct. App. 1985).  
At trial, the family court heard an abundance of 
 testimony concerning the earning capacities of the parties, much of it conflicting.  
 On his financial declaration, Father claimed a gross monthly income of $600 
 per month because he only worked three days a week as a tattoo apprentice.  
 He testified the benefit of the apprenticeship is a resulting recommendation 
 into a tattoo guild, though he admitted you dont have to be a member of the 
 [guild to] set up shop and make money tattooing.  Mother testified Father worked 
 both part-time and full-time as a tattoo artist when she was living with him 
 and he averaged $150 per day, after expenses.  She stated he had a reputation 
 in the community as a very good artist.  Father, on the other hand, stated 
 he usually averaged only $50 per day.          
Ten years ago, Father 
 was employed as a construction worker making approximately $14 per hour.  He 
 quit this job to follow the Grateful Dead around the country.  Even though he 
 did not graduate, he received a certificate of completion in 1991 from the Harley 
 Davidson mechanics program.  Furthermore, he was proficient enough in motorcycle 
 maintenance to build his own bike out of spare parts.  Mother provided current 
 occupational employment wage statistics for motorcycle mechanics and highway 
 maintenance workers in Florida, where Father currently resides.  Construction 
 workers with experience can earn $13 per hour, while entry-level mechanics can 
 earn as much as $10 per hour.  Father, however, testified he was injured in 
 several car wrecks, preventing him from doing any work that requires sitting 
 or standing.  He did not, however, submit any evidence to corroborate these 
 statements.  He also admitted he was not really fighting the denial of his 
 disability claim because he did not need to be living off the state.  He testified 
 he could make enough to pay for [his] food on the table with his salary of 
 $150 per week.   
Although this court has authority to find the facts 
 in accordance with our own view of the evidence, we are mindful that the family 
 court judge was better situated to evaluate witness credibility and assign comparative 
 weight to their testimony.  Bowers, 349 S.C. at 91, 561 S.E.2d at 613.  
 It is abundantly clear from the family courts order that the trial judge found 
 Fathers testimony grossly lacking in the areas of consistency and credibility, 
 and from what we can glean from the record on appeal, we agree.  Husband contradicted 
 himself throughout his testimony about his business, finances and the facts 
 of this case. For instance, on direct examination he testified his tattoo business 
 failed because he didnt have enough business smarts to keep it going.  On 
 cross-examination, however, he claimed the business failed because the guy 
 [he] was going in partnership with [was] tripped out on drugs.  And he made 
 [them] get kicked out of [their] studio.  In a deposition, Father stated that 
 he was involved in litigation to recoup these business losses.  When questioned 
 on the matter at trial Father explained he never pursued the lawsuit.  In 
 fact, he could not even recall the name of the attorney representing him in 
 the alleged action.  Similarly, at trial, Father denied having knowledge of 
 the paternity test results until shortly before trial began, while in his deposition 
 he admitted learning of the results in January 2002.  
The South Carolina Code defines income 
 of a parent as the actual gross income of the parent, if employed to full capacity, 
 or potential income if unemployed or underemployed.  27 S.C. Code Ann. Regs. 
 114-4720(A)(1) (Supp. 2003).  To determine potential income, the court should 
 determine the employment potential and probable earnings level of the parent 
 based on that parents recent work history, occupational qualifications, and 
 prevailing job opportunities and earning levels in the community.  27 S.C. 
 Code Ann. Regs. 114-4720(A)(5)(b) (Supp. 2003).  For the reasons discussed above, 
 we find no error in the family courts acceptance of Mothers testimony regarding 
 Fathers earning potential for the purposes of calculating child support.
We likewise find the family courts consideration 
 of money Father receives from his mother a proper factor in the computation 
 of child support.  In regard to computing income for the purpose of determining 
 child support, the regulations provide:

(2)(b) In addition to determining potential earnings, the 
 court should impute income to any non-income producing assets of either parent, 
 if significant, other than a primary residence or personal property . . . .
Gross income does not include: . . . 
(3)(c) In-kind income; however, the court should count 
 as income expense reimbursements or in-kind payments received by a parent from 
 self-employment or operation of a business if they are significant and reduce 
 personal living expenses, such as a company car, free housing, 
 or reimbursed meals.

27 S.C. Code Ann. Regs. 114-4720(A)(2)(b) & (A)(3)(c) 
 (emphasis added).
Father admitted his mother gave him large 
 amounts of cash in 1998, 1999, and 2002 for maintenance of the house they jointly 
 own; however, he submitted no evidence that the money was actually spent on 
 anything relating to the upkeep of the house.  His mother also pays his portion 
 of the mortgage, amounting to approximately $5,149.92 per year.    In this case, 
 Father admits that by maintaining the house, he is managing an investment for 
 his mother.  Because Fathers personal expenses are substantially reduced by 
 the payments he receives for this service, we conclude the money given to Father 
 falls under the exception to the general rule that in-kind income is not gross 
 income for the purposes of computing child support. 
Father argues that because he is not 
 obligated to pay taxes on this income, and there is no guarantee he will continue 
 receiving these monetary gifts in the future, it should not be considered as 
 gross income for the purposes of calculating child support.  We are not convinced.  
 In Mobley v. Mobley, 309 S.C. 134, 139, 420 S.E.2d 506, 509 (Ct. App. 
 1992), this court held a husbands income from employee benefits, including 
 housing and utilities, could be treated as income for purposes of determining 
 child support payments even though the husband had no tax liability for the 
 value of the housing or any guarantee that he would continue to receive the 
 bonuses.
Having reviewed the record, we find by 
 a preponderance of the evidence that Father has a potential to earn significantly 
 more income. We therefore affirm the family courts determination that Fathers 
 imputed income is $2,929 per month.  Consequently, we uphold the family courts 
 award of $589 per month in child support.   
II. Attorneys  Fees
Father claims the family court 
 erred in awarding Mother $7,500 in attorneys fees.  We disagree.
The award of attorneys fees is within the discretion 
 of the court.  Hardwick v. Hardwick, 303 S.C. 256, 261, 399 S.E.2d 
 791, 794 (Ct. App. 1990).  In determining whether to award attorneys fees, 
 the court should consider each partys ability to pay his or her own fees, the 
 beneficial results obtained by the attorney, the parties respective financial 
 conditions, and the effect of the fee on each partys standard of living.  E.D.M. 
 v. T.A.M., 307 S.C. 471, 476-77, 415 S.E.2d 812, 815 (1992). 
We find no abuse of discretion 
 in requiring Father to pay a portion of Mothers attorneys fees.  The family 
 court found Mother owed her attorney at least $9,380.50.  In addition, Mother 
 incurred costs of $1,075.70 during the discovery process due to Fathers refusal 
 to cooperate.  Father also failed to comply with court ordered mediation, prolonging 
 this litigation.
 Fathers potential income, 
 combined with his earnings for managing the property on which he lives, brings 
 his total gross monthly income to an amount greater than Mothers.  Furthermore, 
 Father has equity in the Florida residence of approximately $29,000. [2]     
On the other hand, Mother 
 has no assets or savings, and is burdened by considerable debt.  She cannot 
 afford to pay her attorneys fees without substantially impacting the standard 
 of living of her and her children.  See Pendergast v. Pendergast, 
 354 S.C. 32, 40, 579 S.E.2d 530, 534 (Ct. App. 2003).  Because of Fathers conduct, 
 including his failure to comply with the mediation order or cooperate with discovery, 
 Mother incurred a greater amount of attorneys fees.  Mother testified, [h]e 
 just kept saying, Take me to court when she would beg him for money.  In 
 fact, Father admitted he didnt give her any other option other than coming 
 to court.  This court finds his conduct unnecessarily prolonged this litigation.
Mothers counsel achieved 
 beneficial results, as she received a substantial award of child support, which 
 we now affirm.  As the family courts appropriate consideration of the E.D.M. 
 factors in determining the amount of attorneys fees is apparent from the record, 
 we conclude the family court did not err in requiring Father to contribute $7,500 
 toward Mothers attorneys fees.
III. Lump Sum Payments
Father claims the family court 
 erred in requiring him to pay attorneys fees and retroactive child support 
 in large lump sum payments.  We disagree.
The family court ordered 
 Father to pay $2,500 of the attorneys fees in a lump sum.  It further ordered 
 three equal installments of $3,951.67 for retroactive child support.  Father 
 has a potential income of $2,929 per month and substantial equity in his home.  
 He has the ability to pay the past due child support and attorneys fees in 
 the time allotted and this will not create any undue hardship or burden on him.  
 Accordingly, we affirm the award of lump sum payments for the attorneys fees 
 and child support.
IV. Life Insurance Award Reservation
Father claims the family court 
 erred in reserving an award of life insurance. We agree.  
South Carolina recognizes 
 the availability of life insurance as security for the support obligation.  
 See S.C. Code Ann. § 20-3-160 (Supp.2003).  The family court is within 
 its legal authority to require a supporting spouse to maintain a life insurance 
 policy naming the child as beneficiary to insure the continued support of the 
 minor child.  Ivey v. Ivey, 286 S.C. 315, 318, 334 S.E.2d 123, 125 (Ct. 
 App. 1985).  This imposition, however, must be based on compelling reasons, 
 such as failure to pay, which make the security a necessity.  Id.  
Although the family court denied 
 Mothers request for Father to maintain life insurance with the child as irrevocable 
 beneficiary, the court reserved the right to grant the request in six months. 
 A reservation of an award is not standard in child support cases because if 
 it subsequently appears security is necessary, the continuing jurisdiction of 
 the family court affords ample opportunity to require security by life insurance.  
 Id.   The family court may reserve an award if there are present or foreseeable 
 circumstances warranting the reservation.  Hardy v. Hardy, 311 S.C. 433, 
 435-36, 429 S.E.2d 811, 813 (Ct. App. 1993).  When there are no compelling reasons 
 for an award of life insurance as security for the child support obligation 
 at the time of trial, and no indication of physical or mental illness, foreseeable 
 change in need in the future, or such other extenuating circumstance, reservation 
 is not appropriate.  Donahue v. Donahue, 299 S.C. 353, 363, 384 S.E.2d 
 741, 747 (1989).        
 Because the record 
 does not reflect any specific factual findings to support reservation of the 
 grant of life insurance as security for support, we reverse the family courts 
 ruling on this issue.  However, we remand this issue back to the family court 
 for additional findings to determine what extenuating circumstances exist, if 
 any, to justify a reservation of the award.
CONCLUSION
For the reasons stated herein, the family courts 
 rulings are hereby 
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HEARN, C.J. , GOOLSBY and  WILLIAMS, JJ. , concur.

 
 [1]   We decide this case without oral argument pursuant 
 to Rule 215, SCACR. 

 
 
 [2] Current equity in the home is approximately $58,000, split between 
 the co-owners.