THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Dorothy Ann Hamilton Kimbrell, Appellant,
v.
William Calvin Kimbrell, Jr., Respondent.
 
 
 

Appeal From Greenville County
 Robert N. Jenkins, Sr., Family Court Judge

Unpublished Opinion No. 2005-UP-145
Heard January 12, 2005  Filed March 3, 2005

AFFIRMED AS MODIFIED

 
 
 
O.W. Bannister, Jr., of Greenville, for Appellant.
Jeffrey Falkner Wilkes, and Kim R. Varner, both of Greenville, for Respondent.
 
 
 

PER CURIAM:  This is an appeal of a family courts equitable distribution of marital assets.  We affirm as modified.
FACTS
Dorothy Ann Hammond Kimbrell (Wife) and William Calvin Kimbrell, Jr. (Husband) married on February 27, 1982 and had three children together.  On February 16, 2000,Wife filed an action for divorce on the ground of physical cruelty and prayed for custody of the minor children, equitable division of the marital property, alimony, child support, and attorneys fees.  
Following a hearing, the family court issued a temporary order requiring, among other things, Husband to pay the guardian ad litems initial fee of $1,000.  It ordered Husband to maintain use of the marital home and . . . be responsible for any insurance, taxes, costs, maintenance, or upkeep associated therewith.  The court also ordered Husband to pay Wife $4000 a month in unallocated support.  
By consent of the parties, Wife subsequently moved back into the marital home.  When Husband refused to continue paying the utilities and mortgage, Wife brought a rule to show cause action against him to enforce compliance with the temporary order.  The family court held that Husband was not in contempt because he was not required to pay $4000 in support as well as be responsible for the mortgage and the utilities of the marital residence.  
The parties entered into an agreement, approved by the family court, that placed custody of the children with Wife and equally divided the proceeds from the sale of the marital home, a 401K Plan, and the remainder of the marital estate, leaving the determination of which assets and debts constituted the marital estate for the family court.  The family court issued the order of divorce on the ground of continuous and uninterrupted separation for more than one year.  The family court subsequently issued a final order on the equitable division of the assets and debts in May of 2002.  Wifes attorney filed a motion to alter or amend the judgment, which was denied.  This appeal followed.                
STANDARD OF REVIEW
In appeals from the family court, this court has authority to find the facts in accordance with our own view of the preponderance of the evidence.  Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).  This broad scope of review, however, does not require us to disregard the findings of the family court, nor does it relieve the appellant of the burden of convincing us that the family court committed error.  Stevenson v. Stevenson, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  We are mindful that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  Bowers v. Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002).
LAW/ANALYSIS

I.                   Deferred Cash Bonus Program

Wife claims the trial court erred in excluding the post-separation portion of the incentive deferred cash bonus program from the marital estate.  She also claims it erred in estimating this income to be taxable to Husband at 40%.  We disagree.
The term marital property means all real and personal property, which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation.  S.C. Code Ann. § 20-7-473 (Supp. 2004).  Husbands employers deferred cash bonus program rewarded employees who were productive employee[s] of [the] company and in good standing with the company for four years.  As the Wife acknowledges in her brief, the Husband received the bonuses as an incentive to continue his employment.  The amount of the bonus was based on Husbands earnings for a particular year.  However, he was not entitled to the funds unless he worked for the company for four more years and did not report those monies on his taxes until distribution at the end of the fourth year.  The trial court awarded Wife, after the subtraction of 40% to pay Husbands taxes on each bonus, 75% of the 1997 deferred bonus, 50% of the 1998 deferred bonus, and 25% of the 1999 deferred bonus, if they ever vested.  
We find that the family courts calculation of the marital portion of the deferred bonus program is not unreasonable.  Although the amount Husband earned for the bonuses was based on the market each year he was employed, he earned them by staying with the company for four more years.  The bonuses did not actually vest until they matured four years later, and he would not have received the monies if he left the company before the four years expired.  Thus, Husband had not earned the entire amount of the bonuses at the time of the filing of marital litigation.  Accordingly, we find no error in the family court prorating the bonuses.
We also find no error in the family courts deduction of 40% of the bonuses prior to division to allow for taxes.  The family court must consider the tax consequences to each party as a result of equitable apportionment.  S.C. Code Ann. § 20-7-472(11) (Supp. 2004).  Husband testified that the distribution flows to him as taxable income at the tax rate of 40%.  We find the family courts estimation of the Husbands tax consequences was not unreasonable.  

II.                Wachovia stock

Wife claims the family court erred in finding one account included the Wachovia stock from Husbands incentive program.  We disagree.
Husband testified that the Wachovia ILJ account encompassed the incentive program stocks.  Though Wife claims Husband did not produce some of the accounts in his property disclosure, she offers no evidence to the contrary.  Furthermore, Husband testified on cross-examination that Wife confused the accounts and double counted stock.  The family court, which was in a better position to evaluate the credibility of Husband and Wife in regard to the confusion in documentation, found Husband disclosed all the accounts.  The family court treated the account as marital property and divided it equitably.  Therefore, there was sufficient evidence for the family court to conclude that the incentive program stock was part and parcel of the Wachovia stock.  

III.             IRA

Wife argues the family court erred in finding an IRA was non-marital.  Husband testified that the IRA, which he had held for seven years, was a rollover from his pre-marital employment with the exception of a percentage earned during two years of the marriage.  Though Wife testified that the entire IRA was marital property, she offered no evidence otherwise.  Husband admits the family court erred in holding the entire IRA was non-marital.  Therefore, we modify the order of the family court and hold 2/7 of the IRA is marital property and should be divided equally between the parties.  

IV.            Marital fund withdrawals

Wife argues the family court erred in finding certain payments made from the marital fund to be marital debt.  We disagree.  Husband paid numerous marital debts from the marital fund.  The family court then ordered half of the debts to be deducted from Wifes portion of the marital assets.  
A. Guardian ad litem fees
In the temporary order, the family court ordered Husband to make the initial $1,000 payment to the guardian ad litem based on his available cash flow.  In the final order, the family court ordered Wife to be responsible for $1000 of the remaining $1500 balance owed to the guardian, finding that the expenditure of time by the guardian was necessitated by [Wifes] actions and the fact that even after the expiration of two (2) years [Husband] still has not had a visitation with his daughters.  It held that the $1000 Husband withdrew from a marital account to pay the initial fee was an expense to be shared equally between the parties.  An award of guardian ad litem fees lies within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion.  Nash v. Byrd, 298 S.C. 530, 537, 381 S.E.2d 913, 917 (Ct. App. 1989).  As the family court found the fees were incurred due to the wifes conduct, we find no abuse of discretion in the court ordering the wife to be responsible for a majority of the fees.  Furthermore, the wife failed to cite any authority prohibiting the family court from reallocating the payment of the guardian fees ordered in the temporary order.  Accordingly, we find no error in the family courts allocation of the guardians fees.  
B. BellSouth phone bill 
Wife claims a bill from Bell South for $206.73 should be entirely Husbands responsibility.  However, Wife admitted the bill was due before she moved out of the marital home.  Husband testified he gave Wife money for the bill at the time it was due.  Although Wife claimed she had paid the bill, Husband testified that he paid the bill in April because it had not been paid.  The family court, in finding the bill was a marital debt, received ample testimony that the said bills were incurred prior to the separation and were for the benefit of the family.  As the family court was in the best position to evaluate the credibility of the witnesses, we find no error in its holding that the bill was a marital debt.  See Bowers v. Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002).
C. Pharmacy bill
Based on the testimony of the parties, the family court also found the pharmacy bill to be marital debt.  Wife admitted the bill, which was for prescriptions for Wife and the parties son, became due before the parties separated.  Her only argument against being responsible for part of the bill was that she thought because Husband did not send her the bill, it was his personal bill.  We find no error in the family courts determination that this bill was in fact a marital debt.  
D. Cable bill and mortgage payment
Husband testified he paid the mortgage payment for February in June of 2000.  In addition, Husband claimed that in July of 2000 he had to pay two months of cable bills because the bills had not been paid at the time Wife left the marital home.  The family court found Husbands testimony credible and declared this to be marital debt.  As the family court was in the best position to observe and evaluate the credibility of the witnesses and their conflicting testimony, we find no error in this determination.  See Bowers, 349 S.C. at 91, 561 S.E.2d at 613.  
E. Furniture
          Finally, the wife challenges the family courts holding that bedding Husband purchased constituted marital debt.  The family court determined the parties had agreed during mediation to use money from the marital funds to purchase bedroom furniture for the children to use when they visited Husband because Wife retained all of the original furniture.  The record reflects evidence of this agreement.  Therefore, we find the family court did not err in deducting half of the costs of the furniture from Wifes share of the marital assets.  

V.               Jewelry

Wife argues the trial court erred in finding her jewelry had increased in value.  We disagree.
Wife listed all of her jewelry as valued at $7,450.00.  The family court noted Husband valued the jewelry at a retail price of $35,000.  The court rejected both of these valuations.  Considering all of the evidence, the family court valued the marital portion of all jewelry to be $12,500.00.  This amount included the marital portion of the engagement ring and all of the wifes other jewelry.  The original engagement ring was stolen and replaced with a more expensive ring after the parties had been married some years.  The court recognized Husband had documentation to support a valuation of Wifes engagement ring of almost $9000 based on 1995 prices and that the $5000.00 Dollar wholesale increase in the engagement ring was not considered in the said coverage.  Husband valued the remaining jewelry as $7,500.  As the family courts valuation of the jewelry was within the range of evidence, we find no error.  See Woodward v. Woodward, 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct. App. 1987) (stating the family courts valuation of property will be affirmed if it is within the range of the evidence).

VI.            Mortgage payments

Wife claims the family court erred in deducting five months of mortgage payments from her one half share of the marital property.  We disagree.  
     The temporary order required Husband to pay the mortgage for the months now being attributed to Wife.  However, in the same order, the family court awarded Wife $4000 a month in unallocated support.  In its order refusing to hold Husband in contempt for failure to pay the mortgage the family court clarified the temporary order by finding Husband was not responsible for making the mortgage and utility payments in a house in which he no longer resided because the temporary order was . . . predicated on [Husband] having possession of the marital residence at his costs.  Husband continued to pay wife $4000 a month in support during this time.  Based on the courts finding, Wife was responsible for the mortgage payments on the home beginning with the month she moved back into the house.  Therefore, we find the family court correctly ordered the five months of mortgage payments be deducted from Wifes share of the marital assets.    
CONCLUSION
As Husband admitted that 2/7 of the IRA at issue was marital, we modify the family courts decision finding the entire IRA was non-marital and hold 2/7 of the IRA is marital property for purposes of equitable distribution.  We find no error in the family courts decisions as to the remainder of property at issue on appeal.  The family courts order is hereby
 Affirmed AS MODIFIED.
 HUFF, KITTREDGE, and BEATTY, JJ. concur.