21104

Julia R. McKINNEY, Appellant, v. S. J. McKINNEY, Respondent.

(261 S. E. (2d) 526)

*William S. Tetterton,* Camden, *for appellant.*

*Edward M. Royall,* Camden, *for respondent.*

January 2, 1980.

GREGORY, Justice:

Appellant Julia R. McKinney was granted a divorce from respondent S. J. McKinney. The Family Court incorporated a property settlement agreement into the decree. This is an appeal from that portion of the decree denying appellant the further sought relief of alimony and attorney fees. We reverse and remand.

The parties were married in July of 1955 and are the natural parents of four children. Subsequent to their separation in late February of 1977, appellant and respondent signed with the advice of separate counsel an agreement entitled "Property Settlement Agreement," the terms of which are hereinafter set forth. It is this agreement which gives rise to the issues on this appeal.

Appellant's petition alleged desertion on the part of respondent and sought a final divorce as well as custody of the

children, alimony, child support and attorney fees, both *pendente lite* and permanently. Respondent's answer admitted desertion but asserted that the parties had entered into the Property Settlement Agreement which bound them to its terms regarding support, lump sum alimony, attorney fees, custody and other related matters.

At the hearing appellant took the position that the agreement validly disposed of the issues of custody, child support and marital property settlement, but that it did not touch on the remaining issue of alimony nor did it conclude the matter of attorney fees.

The trial judge concurred with respondent that the agreement settled all issues arising out of the marital relationship, including alimony and attorney fees, and barred testimony as to these issues.

We encourage litigants to reach an extrajudicial agreement on these marital issues. However, as we held in the recent case of *Fischl v. Fischl,* 272 S. C. 297, 251 S. E. (2d) 743 (1979), even a plain, unambiguous agreement is nevertheless finally subject to the duty of the Family Court judge to rule upon its fairness. 27A C. J. S. *Divorce* § 234; see 24 Am. Jur. 2d, *Divorce and Separation,* § 906. But as with any other contract, where the language of the agreement is susceptible of more than one interpretation, the Family Court judge must first ascertain the intention of the parties by examining the extrinsic circumstances surrounding the agreement and the parties, *Langston v. Niles,* 265 S. C. 445, 219 S. E. (2d) 829 (1975), before ruling on its fairness.

The agreement in its entirety provides as follows:

STATE OF SOUTH CAROLINA
County of Kershaw.

## PROPERTY SETTLEMENT AGREEMENT

*This agreement* is made and entered into this 11th day of March, 1977, by and between S. J. McKinney, hereinafter referred to as "Husband", and Julia R. McKinney, hereinafter referred to as "Wife"; *witnesseth:*

*Whereas,* the parties hereto are husband and wife, having been married on or about July 9, 1955, at Greenville, South Carolina; and,

*Whereas,* due to irreconcilable differences the husband has elected to leave the residence of the parties on or about February 26, 1977; and

*Whereas,* the parties are desirous of entering into an agreement for the proper maintenance and support of the children, both before eighteen and while in college; and also for a proper property settlement between the parties;

*Now, therefore,* in consideration of the mutual promises of each of the parties hereto it is agreed as follows:

1. That from and after this date, it shall be proper for each of the parties hereto to live separate and apart from the other, free of the marital control, conjugal rights and demands of the other and each party agrees to refrain from bothering, molesting or compelling the other to do anything against his or her will not herein especially set forth.

2. That from March 1, 1977, the husband agrees to pay to the wife as support for the children under eighteen (18) the following sums: $800.00 per month for three children; $600.00 per month for two children; and $400.00 per month for one child. These payments shall extend until August 31st of the year in which each child reaches her eighteenth birthday, unless she does not plan to attend college, has married or has otherwise been emancipated. Payments as set

forth above will be made to the wife in two monthly install-ments, one-half (½) of the monthly payment on the 1st of each month and one-half (½) thereof on the 15th day of each month. These payments shall become effective the 1st day of March, 1977.

3. The husband agrees that for those children over eight-een (18) years of age who have not yet reached their twenty-third (23) birthday, and who are students working toward a degree in a college, he will pay all of the tuition, dormitory, cafeteria of said school for regular meal tickets, laboratory fees and book fees for the child at a South Carolina state supported college or state supported tech school or will pro-vide the same basic fees at a rate comparable to these fees in effect at the University of South Carolina at the time of the child's entrance to college at a private institution, but no more than actual cost of these fees, whichever is less, for a total of eight semesters or equivalent. These expenses will be paid by the husband as they are due. In addition, the husband agrees to pay to said child an allowance of $35.00 per month on the 15th day of each month during the school year. If a child marries during college, but continues to go to college on a regular basis working toward a degree, the same fees will be paid to the 23rd birthday.

4. The husband agrees to provide medical and dental in-surance through the duPont plan for the children as long as they are claimed by him on his tax returns. All other me-dical, dental and prescription drugs not covered by insurance will also be paid by him as long as they are claimed by him on his tax returns; however, any optional or cosmetic sur-gery or procedures or treatments must be approved by him in advance for him to be obligated for payment.

5. The husband will be permitted to claim the children on his income tax returns as dependents so long as he pays child support as herein provided. The wife agrees to file a joint return with the husband for the year 1977, but neither party will incur any more tax liability than if he or she had filed separately.

6. The husband agrees to execute a deed of all of his interest in the residence at the corner of Union and Sarsfield to the wife at the time of this agreement, free of any liens or encumbrances, but it is hereby agreed between the parties that the deed shall be delivered to G. Thomas Cooper, Jr., Attorney, in trust, before recording, to be held in escrow. Should a divorce occur between the parties during eighteen months from date, then G. Thomas Cooper, Jr. is authorized to deliver the deed to the wife for recording. Should the husband die or become incompetent prior to a divorce between the parties, G. Thomas Cooper, Jr. shall deliver the deed to the wife for recording. Should the wife die, or fail to procure the divorce within eighteen months through no fault of the husband, or become incompetent prior to a divorce between the parties, G. Thomas Cooper, Jr. shall deliver the deed to the husband. Allowance for taxes, insurance and utilities are included in the support payments and, therefore, the wife will be responsible for payment of them, including the year 1977.

7. The husband has the right to remove the furniture, silver and other personal property that was given to him from his relative's households whenever he desires to do so. He, however, must give to the wife at least two weeks notice of intention to do so. A list of these articles is attached hereto, but this list shall not be binding in case of omission where actual ownership is known. The husband herewith transfers the furniture in Pat's room to her, the furniture in Kay's room to her and the chest in Julia's room to her.

8. The husband will transfer title to the 1976 Chevrolet and the 1973 Datsun to the wife immediately. Allowance for taxes and insurance on one automobile is included in the support payments, and she, therefore, assumes the payments of taxes and insurance for 1977 and thereafter.

9. The husband agrees to assume the full responsibility for the notes of the wife totaling $3,500.00 at the South Carolina National Bank. In addition, he agrees to assume responsibility for the other open accounts as shown on the

attached sheet. Any other open account incurred by the wife or the children, either before or after March 1, 1977, shall be the wife's sole responsibility, as the support payments cover the children's expenses.

10. The wife shall have the custody of the minor children and in the event that she dies or becomes incapacitated custody will automatically be transferred to the husband to age eighteen (18).

11. The husband shall have the reasonable allowances for visitation with the children on at least a weekly basis.

12. The husband agrees to provide the following insurance coverages on his life so as to set up a trust in his estate for support of the children in the event of his death. He is to name the trustee and will have the right to change that trustee from time to time. The trust will disburse the payments according to the support schedule herein set forth either before or after the children reach eighteen (18) years of age. In addition, it shall have the right to purchase hospital insurance to take care of the coverage that would have been provided through the husband's duPont plan. As long as Pat and Kay are both in college and up to the age of twenty-three (23) years at the time of the death of the husband, $100,000 will be placed in trust; when Pat graduates, drops out of college or reaches age twenty-three (23) and is still enrolled in college, the trust will be reduced to $75,000.00; when Kay graduates from college, drops out of college, or reaches age twenty-three (23) and is still enrolled in college, or does not attend college within one year following high school graduation, the trust will be reduced to $55,000.00; if Julie does not attend college the trust can be reduced to $40,000.00; when Julie graduates from college, drops out of college, or reaches age twenty-three (23) and is still enrolled in college, or does not attend college within one year after finishing high school, then the trust shall be reduced to $25,000.00, when Emily reaches her eighteenth (18th) birthday; when Emily graduates from college, drops out of college or reaches age twenty-three (23)

and is still enrolled in college or does not attend college within one year following high school graduation, the remainder of the trust will be disposed of according to the terms of the will of the husband. If the husband dies at a time when one or more of the children are no longer entitled to support from him, the amount of his life insurance to be placed in trust will correspond to the appropriate amount set forth above.

13. The husband agrees to pay to the law firm of West, Cooper, Bowen, Beard and Smoot the sum of $200.00 as partial legal fees for services rendered to the wife.

14. It is agreed that in the event of a divorce, this agreement shall be submitted to the court as a final property settlement and support agreement and will be asked by the moving party to have the same entered into the record, but the same to survive the divorce action and to be affirmed by the court and thereafter not amended. This agreement embodies the full understanding of the parties hereto.

In *witness whereof,* the parties hereto have set their hands and seals the day and year first above written.

In our view, the Property Settlement Agreement does not clearly treat and dispose of the issues of alimony and attorney fees. It was error for the Family Court to foreclose appellant from seeking a discretionary award of alimony and attorney fees without taking testimony and receiving evidence in an attempt to resolve the ambiguity of the agreement. *Langston, supra.* Upon resolving the ambiguity, it would then be the duty of the Family Court to rule upon the fairness of the agreement. *Fischl, supra.* Absent such a fair contractual disposition of these issues, appellant had the statutory right to seek an allowance of both. Section 20-3-120, Code of Laws of South Carolina (1976).

Respondent correctly notes the well-established rule in this State that both alimony and attorney fees are matters within the sound discretion of the trial judge. *Bailey v.*

*Bailey,* 269 S. C. 1, 235 S. E. (2d) 801 (1977). However, the lower court's decision in the instant case was not the produce of an exercise of its discretion, but rather a ruling as a matter of law. The appellant testified that although she signed the agreement and understood its terms, she was advised by counsel and so understood that by signing the agreement as written she was not waiving her right to later seek alimony and attorney fees. Other than this testimony and the agreement itself, there was nothing before the lower court relevant to the considerations and findings necessary to make such an award of either alimony or attorney fees. Consequently, these issues never reached the discretionary stage.

It is apparent that the agreement contains no specific provision for the payment of alimony. To the contrary, the agreement states that ". . . the husband agrees to pay to the wife as *support for the children* . . . ." (emphasis added), and that these ". . . support payments cover the children's expenses."

It is equally apparent that there is no express waiver or relinquishment by appellant of her claim for alimony.

On the other hand, the agreement contains language which the lower court relied heavily upon in reaching its decision that the agreement encompassed alimony. Paragraph fourteen indicates the parties' intention to submit the agreement to the court in the event of a divorce as a "final property settlement and support agreement" which represented and contained "the full understanding of the parties." Thus, the intent is unclear.

The lower court concluded that the agreement was "more than a mere agreement for alimony or support but rather a true property settlement agreement and ordinarily may not thereafter be modified . . . .", citing *Darden v. Witham,* 258 S. C. 380, 188 S. E. (2d) 776 (1972). However, in *Darden* the Court was concerned with the termination of alimony payments established by the terms of a separation

agreement which had been incorporated into a prior divorce decree on the basis of the wife's remarriage.

We are not here concerned with the modification or termination of alimony rights expressly provided for by agreement and incorporated into a prior decree. Before us is the more basic question of whether the agreement even reaches the issue of alimony.

Whether the matter of alimony is embraced within this agreement is subject to interpretation. Respondent's answer indicates that the payment of lump sum alimony was contemplated and accomplished by the agreement; however, there is no such designation in the agreement itself or evidence of same in the record. Of course, the respondent assumed certain indebtedness under the agreement and transferred certain property thereunder, but this Court has consistently held that alimony contemplates the payment of money, not the transfer of property. *Smith v. Smith,* 264 S. C. 624, 216 S. E. (2d) 541 (1975).

The lower court should have resolved the ambiguity apparent on the face of the agreement by receiving testimony and evidence as to the intentions of the parties and the circumstances of the agreement. *Klutts Resort Realty, Inc. v. Down-'Round Development Corporation,* 268 S. C. 80, 232 S. E. (2d) 20 (1977); *Langston, supra.* After so doing, he may have concluded in accord with his decision here appealed, and if so, his denial of her claim for alimony would have been proper at that time. However, he may also have concluded that the agreement did not reach alimony, and it would then have been his duty to entertain her claim and judge whether in his discretion it was one well-founded. *McNaughton v. McNaughton,* 258 S. C. 554, 189 S. E. (2d) 820 (1972).

It is true that a wife may relinquish by agreement her otherwise rightful entitlement to alimony. *McNaughton, supra.* But where the agreement contains no specific provision for alimony or support for the wife and no express waiver of the wife's claim for alimony, it is error

to deny the wife the right to seek alimony based solely on the agreement and as a matter of law. 27A C. J. S. *Divorce* § 234, p. 1070.

In *McNaughton,* the Property Settlement Agreement contained conflicting provisions relative to alimony which rendered the parties' intent unclear. Accordingly, it became the lower court's duty to interpret the agreement, which it did only after considering the circumstances surrounding the agreement. The lower court's decree in *McNaughton* stated:

I find that on February 7, 1970, the Plaintiff and Defendant entered into a property settlement agreement, the original of which is on file in this Court. *The facts surrounding the "Agreement" are in evidence. After reviewing and carefully considering the evidence* in this case, I am convinced that the benefits derived by the Plaintiff, as a result of the Agreement, were substantial and sufficiently adequate to absolve the Defendant of any present financial responsibility. (emphasis added.)

189 S. E. (2d) at 822-823.

Paragraph thirteen of the agreement is also insufficient in our view to enable the lower court to hold as a matter of law that the agreement limits the appellant's right to attorney fees even throughout subsequent divorce proceedings. At the time the agreement was executed, neither of the parties had instituted an action for divorce. It may become clear upon remand that this was indeed the intention of the parties, but the language used is insufficient on its face to justify that such was the contemplation of the parties.

For the foregoing reasons, the question of whether alimony and the entirety of appellant's attorney fees are embraced in the Property Settlement Agreement is remanded to the lower court for a hearing consistent with this opinion.

Reversed and Remanded.

LEWIS, C. J., and NESS and RHODES, JJ., concur.

LITTLEJOHN, J., dissents.

LITTLEJOHN, Justice (dissenting) :

I respectfully dissent and would affirm the order of the lower court. From a reading of the entire contract and the testimony given at the hearing, I am convinced that, as a matter of law, the agreement was final and settled all property and money disputes between the parties, including alimony.

The appellant wife admits that she read the agreement, understood its terms, and executed it. Paragraph 14 refers to it as a ". . . final property settlement and support agreement . . .." It also states, "This agreement embodies the full understanding of the parties hereto." While the word "alimony" might have been used in this paragraph in addition to "support", I am convinced that the parties understood, or certainly should have understood at the time, that it encompassed a final disposition of all money and/or property disputes. Only a strained construction would permit the judge, on remand, to make any other finding.