636 S.E.2d 644

**Leila Eugenia AUTEN, Personal Representative of the Estate of Millard Benton Parrish, Jr., deceased, Appellant,**

v.

**Sylvia SNIPES, Respondent.**

**No. 4160.**

Court of Appeals of South Carolina.

Submitted Sept. 1, 2006.

Decided Oct. 9, 2006.

Philip E. Wright, Lancaster, for Appellant.

Francis L. Bell, Jr., William J. Nowicki, Lancaster, for Respondent.

GOOLSBY, J.

Leila Eugenia Auten, the sister of Millard Benton Parrish, Jr., and personal representative of his estate, instituted this action to recover funds from Parrish's retirement account that were disbursed to his ex-wife, Sylvia Snipes. The trial court held Auten failed to meet her burden of proving a separation agreement between Parrish and Snipes had the effect of

extinguishing any interest Snipes had in the account. Auten appeals. We affirm.[1]

## FACTS

On April 18, 2000, Parrish rolled his 401K into a Roth IRA with Signator Investments. Parrish named Snipes, his wife at the time, as primary beneficiary to receive the proceeds of the account upon his death.

Parrish and Snipes later separated. On April 9, 2001, they executed a separation agreement providing in pertinent part as follows:

> Husband and wife will each keep all money and bank accounts and 401K plans and profit sharing plans which are in his or her name. . . .
>
> . . .
>
> **LASTLY, IT IS UNDERSTOOD AND AGREED** that the Husband and Wife release and forever discharge the other of and from all causes of action, claims, property rights or any demands whatsoever in law or in equity . . . and the parties to each declare this to be a full, final and complete settlement of all of their property rights, and each party does hereby release and relinquish unto the other all of his or her rights, title, claim, interest and demand, rights of dower in and to the property of the other, whether now in being or hereinafter acquired. . . .

(Boldface in original.) Contemporaneous with the separation agreement, Parrish executed a power of attorney, which allowed Snipes to proceed with a divorce in the Dominican Republic. By decree dated May 23, 2001, a judge in the Dominican Republic dissolved the marriage.[2] Soon after the divorce, Snipes remarried. Even after execution of the sepa-

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

2. The divorce decree provided the "separation agreement entered into between the parties . . . shall survive in this judgment of divorce by reference but not be merged and that the parties are hereby ordered and directed to comply with each and every provision of said agreement."

ration agreement and the divorce, Parrish never changed his will or the beneficiary designation on the Signator account.

Parrish died September 20, 2002. In May 2003, Snipes contacted Signator Investments and received the balance of the account, totaling $114,582.52.

On June 13, 2003, Auten, on behalf of Parrish's estate, sued Snipes for the proceeds of the Signator account and other relief. On August 26, 2003, Snipes filed her answer and counterclaim.

The trial court, sitting without a jury, held a final hearing in the case on November 16, 2004. By that time, the parties had dismissed or resolved all matters in this litigation except for Auten's claim for recovery of the funds in the Signator account.

On May 20, 2005, the trial court issued an order denying Auten the relief she requested. In the order, the trial court made the following findings: (1) because the agreement did not specifically address a retirement account in which one spouse possessed an expectancy as a named beneficiary, the general language of the separation agreement by which Snipes purportedly waived her beneficiary interest in the Signator account was ineffective; and (2) Parrish failed to change the beneficiary on the Signator account notwithstanding that he had both the ability and ample time to do so. This appeal followed.

## STANDARD OF REVIEW

In South Carolina, the construction of a separation agreement is a matter of contract law.[3] Whether the language of a contract is ambiguous is a question of law for the court.[4] The construction of a clear and unambiguous contract is a matter for the court to decide.[5] "Where a contract is capable of legal construction, the court's only function is to

---

3. *McDuffie v. McDuffie*, 313 S.C. 397, 399, 438 S.E.2d 239, 241 (1993).

4. *South Carolina Dep't of Natural Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001).

5. *Pearson v. Church of God*, 325 S.C. 45, 54, 478 S.E.2d 849, 853 (1996).

interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it."[6]

## LAW/ANALYSIS

1. We reject Auten's challenge to the trial court's conclusions that (1) the general release language in the agreement was not intended as a relinquishment of Snipes's claim to the proceeds in the Signator account; and (2) the agreement was not intended to operate as a relinquishment of Snipes's right to be the designated beneficiary of Parrish's retirement account.

In *Stribling v. Stribling*, this court recently observed that "[g]enerally, in South Carolina, divorce does not per se affect the rights of a beneficiary interest. . . . However, it is generally recognized that a beneficiary may contract away the beneficiary interest through a separation or property settlement agreement, even if the beneficiary designation is not formally changed."[7]

Nevertheless, such a relinquishment requires more than "general language of release" in the separation or property settlement agreement.[8] As this court went on to state in *Stribling:*

[I]n South Carolina, a separation agreement may preclude a named beneficiary from recovery of an expectancy interest in two ways. First, a named beneficiary may be precluded from recovery when a separation agreement specifically addresses a particular policy/account providing an expectancy interest *and* the agreement contains language of release applicable to the policy/account. Second, when a separation

---

6. *Lindsay v. Lindsay,* 328 S.C. 329, 340, 491 S.E.2d 583, 589 (Ct.App. 1997).

7. *Stribling v. Stribling,* 369 S.C. 400, 405, 632 S.E.2d 291, 293 (Ct.App. 2006) (citing *Estate of Revis v. Revis,* 326 S.C. 470, 477, 484 S.E.2d 112, 116 (Ct.App.1997)).

8. *Estate of Revis v. Revis,* 326 S.C. 470, 478, 484 S.E.2d 112, 116 (Ct.App.1997). Although *Revis* concerned a beneficiary interest in a life insurance policy rather than a retirement account, the two are analogous in that "[l]ike the beneficiary in a life insurance policy, the IRA beneficiary merely has an expectancy interest in the IRA until the owner's death." *Stribling,* 369 S.C. at 406, 632 S.E.2d at 294.

agreement provides general language of release without specifically addressing the policy/account providing the expectancy interest, a named beneficiary may be precluded from recovery when the policy/account owner intended for the general waiver to apply to the expectancy interest.[9]

█ We hold the first method by which the agreement could have precluded Snipes's expectancy interest in the funds is inapplicable here. The trial court correctly determined the separation agreement did not specifically address a retirement account in which one spouse had an expectancy interest as a named beneficiary. Rather, the agreement merely awarded Parrish and Snipes the retirement accounts that were in his or her name respectively and had no explicit provisions regarding beneficiary interests.[10] Furthermore, the agreement had only general release language and did not specifically require Parrish and Snipes to waive their expectancy interests in each other's retirement accounts. Thus, by the terms of the separation agreement, Snipes did not waive her beneficiary interest in the Signator account.[11]

█ Likewise, Auten cannot rely on the second way that a separation agreement can prevent a named beneficiary from

9. *Stribling*, 369 S.C. at 407, 632 S.E.2d at 294 (emphasis added).

10. In her brief, Auten argues the last paragraph of the agreement operated as a waiver of Snipes's beneficiary interest in the Signator account. We disagree. This paragraph provides that "each party does hereby release and relinquish unto the other all of his or her rights, title, claim, interest and demand, rights of dower in and to the property of the other, whether now in being or hereinafter acquired." Contrary to what Auten suggests, the phrase "whether now in being or hereinafter acquired" refers to property that Parrish or Snipes might receive after executing the agreement, not to after-acquired rights that either could obtain in the other's assets.

11. We further disagree with Auten that the release language at issue here is sufficiently similar to that in *Estate of Altobelli v. International Business Machines*, 77 F.3d 78 (4th Cir.1996), so as to warrant a finding that it amounted to a relinquishment of Snipes's right as the named beneficiary on the Signator account. The parties to the separation agreement in *Altobelli*, expressly "waive[d] and transfer[red]" to each other "any interest" each had in certain accounts awarded to the other spouse. *Id.* at 80. This language is more specific than the general release paragraph in the separation agreement between Parrish and Snipes.

recovering an expectancy interest. We found no evidence in the record before us suggesting Parrish intended the waiver to apply to a beneficiary interest in his retirement account. Significantly, Auten did not challenge the trial court's finding that Parrish never attempted to change the beneficiary designation on the Signator account during the seventeen months between the time of the divorce until his death even though he was able to do so.[12] In addition, although, as Auten argued, there were plausible reasons that Parrish would not desire to leave his retirement funds to Snipes,[13] these motives do not necessarily lead to the conclusion that he no longer intended her to be the beneficiary of those funds in the event she survived him.[14]

■ 2. Auten argues the trial court erred in failing to make a "specific finding" that the separation agreement was unambiguous. Auten contends that, although the trial court found "[t]he appellant, through her attorney, presented in open court that the [a]greement was unambiguous," this was not a "specific finding." Assuming without deciding that Auten has preserved this matter for our review,[15] we hold this

12. *See Estate of Revis*, 326 S.C. at 479, 484 S.E.2d at 117 (suggesting one year to be a reasonable time for an insured to make a change in beneficiaries) (citing *Aetna Life Ins. Co. v. Wadsworth*, 102 Wash.2d 652, 689 P.2d 46 (1984)).

13. The reasons Auten cited were (1) the divorce, (2) Snipes's remarriage soon after, and (3) Parrish's terminal illness.

14. *See Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 172–73, 383 S.E.2d 2, 7 (Ct.App.1989) (distinguishing motive from intent and stating that, whereas motive "is the actor's subjective reason for doing the act," intent "is proved by showing that the actor acted willingly (volition) and that he knew or should have known the result would follow from his act").

15. The record does not indicate Auten moved under Rule 59(e), SCRCP, to alter or amend the judgment on the ground that the trial court failed to make a specific finding that the separation agreement was unambiguous. *See Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004) (stating an issue cannot be raised for the first time on appeal but must have been raised to and ruled on by the trial court); *Hawkins v. Mullins*, 359 S.C. 497, 501–02, 597 S.E.2d 897, 899 (Ct.App.2004) (finding an issue is not preserved when the trial court does not explicitly rule on it and the appellant does not move to alter or amend the judgment on that ground).

argument does not support a finding of reversible error. Any failure by the trial court to make the desired finding did not inure to Auten's prejudice. Indeed, Auten's insistence that the separation agreement is unambiguous would, if anything, bar consideration of parol evidence as to whether or not Parrish intended that the agreement would prevent Snipes from receiving his retirement funds as the named beneficiary on the account.[16]

■■■ 3. Auten further argues the trial court erred in interpreting the word "keep," alleging that, in the appealed order, the definition of the term appearing in the sixth edition of Black's Law Dictionary was selectively edited to fit Snipes's desired interpretation of the agreement. We disagree.

The definition quoted by the trial court excluded the phrases "to continue" and "not to lose or part with." Notwithstanding these omissions, we hold the trial court did not interpret the quoted part of the definition out of context.[17] Rather, it appears the trial court was following the well-established principle that alienability is an intrinsic attribute of ownership.[18] Undue emphasis on the excluded portion of the definition would have the undesirable effect of compromising what was and should have been Parrish's unfettered right to dispose of his property as he wished. This right included the

16. *See Estate of Revis*, 326 S.C. at 478, 484 S.E.2d at 116 ("Where a property settlement agreement is ambiguous, the court may consider parol evidence to ascertain the intent of the parties."). We further note that *Rushton v. Lott*, 330 S.C. 418, 499 S.E.2d 222 (Ct.App.1998), which Auten cites in her brief, is of questionable applicability to this case. In *Rushton*, extrinsic evidence in the form of a letter was admitted as evidence that the parties to the separation agreement at issue had intended to divest the husband's beneficiary interest in a particular asset. *Id.* at 421, 499 S.E.2d at 224.

17. In the appealed order, the trial court stated as follows: "The word 'keep,' in its plain and ordinary meaning, means to 'have or retain in one's own power or possession; ...; to preserve or retain; to maintain, carry on, conduct, or manage." (Ellipses in original.)

18. *Cf. Alderman v. Alderman*, 178 S.C. 9, 44, 181 S.E. 897, 911 (1935) ("One of the main incidents of property is its transferability. The power of disposing of stock, like the power of disposing of any other property, is a common right, and necessarily attaches to ownership.") (quoting 7 Rul. Case L. *Corporations* § 239, at 261 (1929)).

option of retaining Snipes as the beneficiary of his retirement funds upon his death.

■ 4. Finally, we reject Auten's suggestion that Snipes's failure to testify or introduce evidence warrants a finding that she had no expectancy interest in the Signator account. The focus of this controversy is Parrish's intent with respect to his retirement funds. In any event, it is evident from the pleadings that Snipes herself contacted Signator Investments after Parrish's death for payment of his retirement account proceeds; therefore, it would appear that she had reason to believe she had a valid claim to the funds.

**AFFIRMED.**

BEATTY and WILLIAMS, JJ., concur.