663 S.E.2d 74

**Patsy Gail NICHOLSON and Kyle Allen Nicholson, Respondents,**

v.

**F. Allan NICHOLSON, Appellant.**

**No. 4404.**

Court of Appeals of South Carolina.

Submitted June 1, 2008.

Decided June 6, 2008.

526

Margaret A. Chamberlain, of Greenville, for Appellant.

Brian K. James, of Easley, for the Respondents.

ANDERSON, J.

Patsy Gail Nicholson (Mother) and her adult son Kyle Allan Nicholson (Kyle) initiated this action against F. Allan Nicholson (Father) seeking Father's payment of Kyle's college expenses pursuant to a separation agreement. Father appeals

the family court's order in favor of Mother and Kyle. We affirm.[1]

## FACTUAL / PROCEDURAL BACKGROUND

Mother and Father married in March 1978, separated in October 1992, and later divorced. They had two children, Kyle being the youngest. A separation agreement entitled "Complete Property, Support, Custody, and Separation Agreement" (the Agreement) was approved by the family court and made part of the Order Approving Separation. The Agreement provided:

3–OTHER BENEFITS FOR CHILDREN

The Husband presently owns _____ shares of stock in Duke Power Company, as a result of his employment. The Husband agrees to use the proceeds from the sale of the stocks for the minor children's educational needs, first and foremost, or to other necessities for the children as a need may arise. Notwithstanding his continued employment at Duke Power Company or his termination from employment, the Husband agrees to provide for the minor children in an amount equivalent to the value of 1,200 shares of the Duke Power Stock at its present value of 36,000.

Kyle graduated from high school in May 2006 with a grade point average of 3.4 and ranked thirty-eighth in a class of one hundred fifteen. He received awards in art during his junior and senior years. His career ambitions focused on the design field with special interests in automotive design or architecture. In September 2006, he enrolled at Tri–County Technical College majoring in University Transfer hoping to later attend Clemson University or another school offering design programs.

While still in high school, Kyle was diagnosed with depression and placed on medication. During his first semester at the technical college, he explained to the court his depression was worsened by the stress of not knowing where he would live or if he would have the money to continue his education. His anxiety grew to the point where "everyday was kind of a

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

struggle" and, following a suicide attempt and hospitalization, he withdrew from school. Kyle did not take his prescribed medication properly, used marijuana prior to his hospitalization, and tried cocaine one time. At the time of the hearing, Kyle remained in counseling and found it beneficial. He no longer uses illegal drugs and his prescribed medicine has been adjusted with positive results. Kyle returned to Tri–County Technical College the spring semester following his withdrawal.

In his financial declaration, Kyle indicated he intended to participate in a work-study program expecting to earn $309 per month. His tuition was covered by financial aid, federal Pell grants, and a Life Scholarship requiring he maintain a 3.0 grade point average and complete a certain number of credits.

Kyle used a car, but it was not in his name. Because Mother had totaled her vehicle and was moving from the area, she would take the car Kyle had been driving. Among the expenses Kyle submitted were auto related costs of $250 per month and automobile payments of $300 per month. On a monthly basis, Kyle estimated he needed $200 for food and household supplies, $200 for utilities, $30 for his medical co-payment, and $100 for computer and internet supplies. Overall, his monthly expenses were $1620. Additionally, he listed a $4000 debt owed to a family friend for money borrowed by Mother on Kyle's behalf to pay the action's attorney fees.

The family court judge found the "Other Benefits for Children" clause ambiguous. The testimony of Mother and Father was received on the issue of intent. Father testified he earns $72,000 per year as an employee of Duke Energy, where he has worked for twenty five years. The Duke Energy stock referenced in the Agreement began as a stock benefit account but later changed to a 401(k). At the time of the hearing, the stock had split and was worth approximately $60,000. He explained the disposition of the stock at the time Mother and Father entered the Agreement:

Q: [W]as that part of the equitable division of marital property with [Mother], your ex-wife?

A: Yeah, that was set aside yes, to help pay for things, educational things, or things that they needed, as they grew up from the time we separated.

Q: Okay. So in lieu of her taking a percentage of stock, y'all were essentially holding it in trust for your kids; is that right?

A: We set aside that amount to help with the kids.

Father stated he did not understand "educational needs" as used in the Agreement to be college. His understanding of "other necessities for children" included "[c]lothes, things they need in school, food when they don't have money for food, power...."

Father presented the family court with a list of miscellaneous expenditures made on behalf of the children in years past. The list, admittedly prepared for the purpose of the hearing, included such items as trips to the beach and amusement parks, musical instruments, a Play Station, and a go-cart. Father argued these were "other necessities" and asserted his $36,000 obligation should be set off accordingly. He admitted he never communicated to Mother or Kyle that the expenses were to be counted towards the shares of stock he owned.

Mother was currently seeking disability due to temporal arthritis and collagen vascular disease. She had been residing with her aging parents in North Carolina, returned to South Carolina to help Kyle after his emotional problems intensified, and planned to return to her parents' home. She testified the Agreement provided for the children's college education.

The family court judge ruled: the Agreement was ambiguous but (1) the intent was to include college expenses as indicated by the testimony of Mother and Father; (2) "other necessities" was intended to include living expenses incident to college; (3) Father agreed to pay up to $36,000, the stock's value at the time of the Agreement; (4) the older child did not seek benefits under the Agreement; and (5) the Agreement contained no requirement the children mitigate expenses or work.

The order mandated:

Defendant/father shall pay directly to Kyle Nicholson the sum of $800.00 per month for the months of January through May 2007 and for the months of September through December 2007, yet equating to nine (9) months a year. The Defendant/father shall do the same for next

year. Kyle Nicholson shall provide proof to his father that he is continuously enrolled full time to obtain the money. [A]fter Kyle Nicholson's two (2) years at Tri–County Technical College, there shall be a balance left from the agreement in the amount of $21,600.00 for his last two (2) years of college, or eighteen (18) months for a sum of $1,200 per month.

Kyle Nicholson shall be required to exhaust all grants and scholarships, but shall not be required to incur loans or minimize expenses.

Kyle Nicholson shall provide a print-out to his father of his tuition, room and board, books, and his grants and scholarships.

$400.00 transportation expenses shall be included in the tuition, room and board, and books. The room and board expenses shall not exceed the cost to live on campus with room and board and full meal plan.

[T]he Defendant/father's obligation shall forever end if Kyle Nicholson is not continuously enrolled full time, except if he has a medical withdrawal unrelated to substance abuse. Kyle Nicholson shall not use illegal drugs and the Defendant/father shall have full discovery on that issue.

[T]he Defendant/father shall pay attorney's fees directly to Plaintiff's attorney in the amount of $2000 . . . .

Kyle Nicholson is not entitled to assistance under *Risinger v. Risinger*, 273 S.C. 36, 253 S.E.2d 652 (1979).

## *STANDARD OF REVIEW*

On appeal from the family court, this court has jurisdiction to find facts in accordance with its own view of the evidence. *Ray v. Ray*, 374 S.C. 79, 83, 647 S.E.2d 237, 239 (2007); *South Carolina Dep't of Soc. Srvcs., County of Siskiyou v. Martin*, 371 S.C. 21, 24, 637 S.E.2d 310, 311 (2006); *Patel v. Patel*, 359 S.C. 515, 522–23, 599 S.E.2d 114, 118 (2004); *Maxwell v. Maxwell*, 375 S.C. 182, 184, 650 S.E.2d 680, 682 (Ct.App.2007); *Heins v. Heins*, 344 S.C. 146, 151, 543 S.E.2d 224, 226 (Ct.App.2001); *Kisling v. Allison*, 343 S.C. 674, 677, 541 S.E.2d 273, 275 (Ct.App.2001); *Murdock v. Murdock*, 338 S.C. 322, 328, 526 S.E.2d 241, 244–45 (Ct.App. 1999). "This tribunal, however, is not required to disregard

the Family Court's findings." *Bowers v. Bowers,* 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct.App.2002); *Wooten v. Wooten,* 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005); *Badeaux v. Davis,* 337 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct.App.1999). "Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony." *Lacke v. Lacke,* 362 S.C. 302, 307, 608 S.E.2d 147, 150 (Ct.App. 2005) (citing *Scott v. Scott,* 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003)); *see also Kisling* at 678, 541 S.E.2d at 275 ("[B]ecause the appellate court lacks the opportunity for direct observation of the witnesses, it should give great deference to the Family Court's findings where matters of credibility are involved."). This broad scope of review does not relieve the appellant of the burden of convincing this court the family court erred. *Skinner v. King,* 272 S.C. 520, 522–23, 252 S.E.2d 891, 892 (1979); *Davis v. Davis,* 372 S.C. 64, 74, 641 S.E.2d 446, 451 (Ct.App.2006); *Nasser Moghaddassi v. Moghaddassi,* 364 S.C. 182, 190, 612 S.E.2d 707, 711 (Ct.App. 2005).

## ISSUES

Father argues the family court erred by:

(1) finding an enforceable agreement requiring Father to pay Kyle's college expenses including transportation;

(2) denying Father a credit towards the $36,000;

(3) finding Kyle had characteristics qualifying him to receive college funds;  and

(4) awarding attorney fees to Mother and Kyle.

## LAW / ANALYSIS

### I. Ambiguity and Enforceability of the Agreement

Father argues there was no enforceable agreement between himself and Mother concerning Kyle's college expenses. To the extent the agreement is enforceable, Father contends the family court erred in including transportation expenses and denying him a credit. We disagree.

"In South Carolina, the construction of a separation agreement is a matter of contract law." *Davis v. Davis,* 372 S.C. 64, 75, 641 S.E.2d 446, 451 (Ct.App.2006) (citing *Estate of Revis by Revis v. Revis,* 326 S.C. 470, 477, 484 S.E.2d 112, 116 (Ct.App.1997)); *McDuffie v. McDuffie,* 313 S.C. 397, 438 S.E.2d 239 (1993); *Auten v. Snipes,* 370 S.C. 664, 669, 636 S.E.2d 644, 646 (Ct.App.2006). The court's only function with an agreement that is clear and capable of legal construction is to interpret its lawful meaning and the intention of the parties as found within the agreement and to give them effect. *Ecclesiastes Production Ministries v. Outparcel Associates, LLC,* 374 S.C. 483, 499, 649 S.E.2d 494, 502 (Ct.App.2007); *Davis,* 372 S.C. at 75, 641 S.E.2d at 451; *Auten,* 370 S.C. at 669–70, 636 S.E.2d at 647; *Ellie, Inc. v. Miccichi,* 358 S.C. 78, 93, 594 S.E.2d 485, 493 (Ct.App.2004); *Bogan v. Bogan,* 298 S.C. 139, 142, 378 S.E.2d 606, 608 (Ct.App.1989). "In the enforcement of an agreement, the court does not have the authority to modify terms that are clear and unambiguous on their face." *Messer v. Messer,* 359 S.C. 614, 621, 598 S.E.2d 310, 314 (Ct.App.2004); *see also Patricia Grand Hotel, LLC v. MacGuire Enterprises, Inc.,* 372 S.C. 634, 641, 643 S.E.2d 692, 695 (Ct.App.2007); *Ebert v. Ebert,* 320 S.C. 331, 338, 465 S.E.2d 121, 125 (Ct.App.1995). The court must enforce an unambiguous contract according to its terms, regardless of the contract's wisdom or folly, or the parties' failure to guard their rights carefully. *Ellis v. Taylor,* 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994); *Jordan v. Security Group, Inc.,* 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993); *Miccichi,* 358 S.C. at 93, 594 S.E.2d at 493; *Heins v. Heins,* 344 S.C. 146, 158, 543 S.E.2d 224, 230 (Ct.App.2001) ("Unambiguous marital agreements will be enforced according to their terms.") "Where an agreement has been merged into a court's decree, the decree, to the extent possible, should be construed to effect the intent of both the judge and the parties." *Messer,* 359 S.C. at 628, 598 S.E.2d at 318 (citing *McDuffie v. McDuffie,* 308 S.C. 401, 409, 418 S.E.2d 331, 336 (Ct.App.1992)); Davis, 372 S.C. at 75, 641 S.E.2d at 451. "A court approved divorce settlement must be viewed in accordance with principles of equity and there is implied in every such agreement a requirement of reasonableness." *Ebert,* 320 S.C. at 340, 465 S.E.2d at 126 (quoting 17A Am.Jur.2d *Contracts* 479 (1991)).

"[W]hen an agreement is susceptible of more than one interpretation, it is ambiguous and the court should seek to determine the intent of the parties." *Davis,* 372 S.C. at 75, 641 S.E.2d at 452; *Estate of Revis,* 326 S.C. at 477, 484 S.E.2d at 116. "Unambiguous marital agreements will be enforced in accordance with their terms, while ambiguous agreements will be examined in the same manner as other agreements in order to determine the intention of the parties." *Lindsay v. Lindsay,* 328 S.C. 329, 337, 491 S.E.2d 583, 587 (Ct.App.1997) (citing *McDuffie,* 313 S.C. 397, 438 S.E.2d 239 (1993)). Whether an ambiguity exists in an agreement must be ascertained from the language of the instrument. *Steffenson v. Olsen,* 360 S.C. 318, 322, 600 S.E.2d 129, 131 (Ct.App.2004); *Lindsay,* 328 S.C. at 337, 491 S.E.2d at 587. "An ambiguous contract is one capable of being understood in more ways than one, an agreement obscure in meaning through indefiniteness of expression, or having a double meaning." *Davis,* 372 S.C. at 76, 641 S.E.2d at 452 (quoting *Estate of Revis,* 326 S.C. at 477, 484 S.E.2d at 116); *Carolina Ceramics, Inc. v. Carolina Pipeline Co.,* 251 S.C. 151, 155–56, 161 S.E.2d 179, 181 (1968). "[W]here an agreement is ambiguous, the court should seek to determine the parties' intent." *Lacke v. Lacke,* 362 S.C. 302, 309, 608 S.E.2d 147, 150 (Ct.App.2005); *see also Smith–Cooper v. Cooper,* 344 S.C. 289, 295, 543 S.E.2d 271, 274 (Ct.App. 2001); *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship,* 331 S.C. 385, 390, 503 S.E.2d 184, 187 (Ct.App.1998); *Ebert,* 320 S.C. at 338, 465 S.E.2d at 125; *Mattox v. Cassady,* 289 S.C. 57, 60, 344 S.E.2d 620, 622 (Ct.App.1986) ("Like any other agreement, when the language of a settlement agreement [incorporated into a divorce decree] is susceptible of more than one interpretation, it is the duty of the court to ascertain the intention of the parties.").

[I]t is the general rule that parol evidence is admissible to show the true meaning of an ambiguous written contract.... The courts, in attempting to ascertain [the parties'] intention, will endeavor to determine the situation of the parties, as well as their purposes, at the time the contract was entered into. *Bruce v. Blalock,* 241 S.C. 155, 127 S.E.2d 439 (1962). The court should put itself, as best it can, in the same position occupied by the parties when they made the contract. In doing so, the court is able to avail

itself of the same light which the parties possessed when the agreement was entered into so that it may judge the meaning of the words and the correct application of the language. 17 Am.Jur.2d, *Contracts* § 272 (1964).

*Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977); *see also McKinney v. McKinney*, 274 S.C. 95, 104, 261 S.E.2d 526, 530 (1980) ("The lower court should have resolved the ambiguity apparent on the face of the agreement by receiving testimony and evidence as to the intentions of the parties and circumstances of the agreement."); *Charles v. B & B Theatres, Inc.*, 234 S.C. 15, 18, 106 S.E.2d 455, 456 (1959) ("[W]hen the written contract is ambiguous in its terms, . . . parol and other extrinsic evidence will be admitted to determine the intent of the parties.") (citation omitted).

▮▮▮ Mother convincingly clarified the intent behind the provision. When asked if he understood "educational needs" to include college, Father answered "I did not." However, Father did not take the opportunity to convey to the court his understanding of the term. Rather, his filigreed answers played on the very ambiguity the hearing sought to resolve:

Q: But you don't believe that educational needs, refers to college?

A: It could.

Q: But, does it?

A: Not necessarily.

Q: Well, I'm asking you. Does it—educational needs, does it mean college, or does it not?

A: It doesn't say that.

Q: I'm asking you, what do you understand it to mean?

A: It means that I will help provide educational needs as that (sic) arise. And that's like what I said you know, help me with (sic) understand what your needs are, and what you plan to do to help.

Q: So, that could include college?

A: That could.

Contrarily, Mother stated emphatically the Agreement was drafted with the intention of enabling her children to attend college:

Q:  Okay. In paragraph three, on page four of that agreement, tell us what you understood educational needs to mean, and also other necessities to mean?

A:  I clearly remember having this drawn up because I have never been to college, I wanted my children to be able to go to college. So when I had this put in there, I did not know about expenses for college, I did not understand how the system worked. And this money was definitely put side for college expenses for them, whatever that meant. And other necessities at the time I would have thought that meant clearly braces, glasses, a computer. . . .

. . .

Q:  As far as other necessities in there, in educational needs, tell me what you understand—or understood those expenses, and how they relate?

A:  Well like I said, at the time I didn't—I have—did not—wasn't familiar with college to know about anything. I was very aware that when they were 18, that knowing how children are they would want to be on their own and you must have living, eating, clothing, all those things were included—could be included in that, in the other necessities with the college expenses.

When asked what he understood "other necessities" to mean, Father answered:

A:  Clothes, things they need in school, food when they don't have money to pay for their food, power—extra money that's given to them when they don't have money to pay their power bill. Things that make them survive over their time from that we separated, while they were in school.

Concerning transportation, Father was asked:

Q:  If your son attends school, is it a necessity for him to get there?

A:  It is.

Q: Is it a necessity for him to have transportation to get there?

A: It should be.

. . .

Q: So would you agree with me then that if a go-cart is a necessity, and Play Station, beach trip, Gatlinburg, if those things are a necessity, wouldn't you agree with me that him driving to school and having a vehicle would be a necessity?

A: It could be.

Q: All right. Under this agreement?

A: It could be.

The final order of the family court judge concluded succinctly:

5. I find that the agreement is ambiguous on the issue of college expenses.

6. I find that the intent is to include college expenses, as indicated by the testimony of both parents.

7. I find that "other necessities" is intended to include living expenses while the children attend college.

8. I find that portion of the agreement stating "1,200 shares of the Duke Power Stock at its present value of [$]36,000" means that the Defendant/father has agreed to pay up to $36,000.00.

9. I find that the educational needs of the children are the priority of the agreement. The older child is emancipated and did not seek benefits under the agreement.

10. I do not find that there is a requirement in the agreement that the parties' children are required to mitigate their expenses. I find that there is no requirement in the agreement that they work and that it would be irrelevant to the agreement.

. . .

15. I find that $400.00 transportation expenses shall be included in the tuition, room and board, and books. The room and board expenses shall not exceed the cost to live on campus with room and board and a full meal plan.

The Agreement is enforceable and the $36,000, being for the children's education needs "first and foremost," was intended to include the costs associated with a college education. We agree transportation expenses enabling Kyle to attend classes is a necessity under the Agreement. The list Father presented to the family court purporting to justify offsetting his obligation is not convincing. He admittedly prepared the list for the hearing, and at no time over the years did he communicate his outlays were being made pursuant to the Agreement. Although the list is not in the record and the family court did not specifically rule upon it, the items revealed in Father's testimony are not in keeping with the educational needs and other necessities intended in the Agreement. Accordingly, we find no error in denying Father a credit.

## II. Characteristics to Benefit From College

Father avers the family court erred by finding Kyle had characteristics qualifying him to receive college funds. This argument is not preserved, but would fail had it been.

"It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998); *Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 511, 598 S.E.2d 712, 714 (2004); *Creech v. South Carolina Wildlife and Marine Resources Dep't*, 328 S.C. 24, 33–34, 491 S.E.2d 571, 576 (1997); *Bowers v. Thomas*, 373 S.C. 240, 247, 644 S.E.2d 751, 754 (Ct.App.2007); *Floyd v. Floyd*, 365 S.C. 56, 73, 615 S.E.2d 465, 474 (Ct.App.2005). The imposition of the preservation requirement upon an appellant is designed to enable the lower court to rule properly after consideration of all relevant facts, law and arguments. *Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000); *I'On v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000). "An issue is not preserved where the trial court does not explicitly rule on an argument and the appellant does not make a Rule 59(e) motion to alter or amend the judgment." *Doe v. Roe*, 369 S.C. 351, 376, 631 S.E.2d 317, 330 (Ct.App. 2006), *cert. denied* Oct. 18, 2006. "Without an initial ruling by the trial court, a reviewing court simply would not be able to evaluate whether the trial court committed error." *Ellie, Inc.*

*v. Miccichi,* 358 S.C. 78, 103, 594 S.E.2d 485, 498 (Ct.App. 2004).

The argument that Kyle lacks characteristics qualifying him to receive college funds was not raised prior to this appeal. Father acknowledges in his brief that the family court did not specifically state Kyle had characteristics indicating he would benefit from college. Rather, he contends the asseveration is "implicit in its order." In the pleadings, Mother and Kyle alleged that Kyle demonstrated the ability to do well at college, would benefit, and has or would apply for grants and scholarships. In response to this paragraph, Father denied the allegations claiming to be without sufficient knowledge to form a belief and demanding strict proof. Nonetheless, Father testified to Kyle's aptitude:

Q: Okay. Do you agree with me, that your son has the ability to do well in school?

A: Very much so.

Q: Do you think college would benefit him?

A: I do.

Q: Okay. Do you want him, to do well?

A: I do, I've encouraged it.

Additionally, Father conceded if Kyle was struggling with depression and using drugs like marijuana, "some of the best cures" were a stable education and gaining a better life. Father's motion to reconsider focused solely on the grounds the family court failed to adequately consider the Agreement's ambiguity and the intentions of the parties.

Father relies on *Risinger v. Risinger,* 273 S.C. 36, 253 S.E.2d 652 (1979), where our supreme court articulated a nonexclusive list of circumstances under which a family court may order a parent to pay for a child's college education. The *Risinger* court held:

[A] family court may require a parent to contribute that amount of money necessary to enable a child over 18 to attend high school and four years of college, where, as here, there is evidence that: (1) the characteristics of the child indicate that he or she will benefit from college; (2) the child demonstrates the ability to do well, or at least make satisfactory grades; (3) the child cannot otherwise go to

school; and (4) the parent has the financial ability to help pay for such an education.

*Id.* at 39, 253 S.E.2d at 653–54. However, the family court judge explicitly stated Kyle was not entitled to assistance under *Risinger.* Instead, the judge cited *Lacke v. Lacke,* 362 S.C. 302, 608 S.E.2d 147 (Ct.App.2005), in ruling that Kyle "shall be required to exhaust all grants and scholarships, but under [*Lacke* ] Kyle Nicholson is not required to incur loans or minimize expenses."

In *Lacke,* an agreement in a divorce decree required both parents to pay for the children's "college education," a term found ambiguous as to which expenses were included. This court ruled when a parent voluntarily enters an agreement to assume a child's college education, the child has no obligation to minimize expenses, take on student loans, or contribute their own income unless the agreement so provides. *Id.* at 314, 608 S.E.2d at 153. We explicated *Lacke* was "governed by the parties' agreement. Consequently, *Risinger* ... [was] inapplicable. Pursuant to *Risinger,* the family court may order a parent to pay for a child's education **where no agreement to pay exists.**" *Lacke,* 362 S.C. at 313, 608 S.E.2d at 153 (emphasis added). As in *Lacke,* this controversy is governed by the Agreement and, thus, the *Risinger* analysis is inapplicable.

## III. Attorney Fees

Father contends the family court erred in awarding attorney fees to Mother and Kyle. Specifically, Father argues the award should be reversed because the family court failed to explain its reasoning and consider the appropriate factors. Counsel for Mother and Kyle submitted an affidavit requesting attorney fees of $4220 plus costs and fees totaling $235. The family court judge ordered Father to pay $2000, stating at the hearing, "I find that [Father] presented credible evidence of his attempts to resolve this without litigation, and his offers of support. I also believe Kyle should take some responsibility for where he finds himself." The final order merely offered, "I find that Defendant/father was credible on his attempts to resolve some issues with his son." Although the family court does not fully articulate its reasoning or

contemplate the related factors, this error does not necessitate reversal.

Attorney fees may be assessed against a party in an action brought in family court. S.C.Code Ann. § 20–7–420(A)(38) (Supp.2005). The award of attorney fees is at the sound discretion of the family court. *Patel v. Patel*, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004); *Lanier v. Lanier*, 364 S.C. 211, 221, 612 S.E.2d 456, 461 (Ct.App.2005); *Lacke*, 362 S.C. at 317, 608 S.E.2d at 154. "An award of attorney's fees will not be overturned absent an abuse of discretion." *Shirley v. Shirley*, 342 S.C. 324, 341, 536 S.E.2d 427, 436 (Ct.App.2000) (citing *Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988)); *see also Arnal v. Arnal*, 363 S.C. 268, 290, 609 S.E.2d 821, 833 (Ct.App.2005); *Wynn v. Wynn*, 360 S.C. 117, 126, 600 S.E.2d 71, 76 (Ct.App.2004). "In deciding whether to award attorney's fees, the family court should consider: (1) the parties' ability to pay; (2) the beneficial results obtained by counsel; (3) the respective financial conditions of the parties; and (4) the effect of the fee on each party's standard of living." *Lacke*, 362 S.C. at 317, 608 S.E.2d at 154 (citing *E.D.M. v. T.A.M*, 307 S.C. 471, 415 S.E.2d 812 (1992)); *Davis v. Davis*, 372 S.C. 64, 88, 641 S.E.2d 446, 458 (Ct.App.2006); *Bowers v. Bowers*, 349 S.C. 85, 99, 561 S.E.2d 610, 617 (Ct.App.2002). Our supreme court has identified the following factors for determining the amount of reasonable attorney fees: (1) the nature, extent, and difficulty of the case; (2) the time devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results; and (6) customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991). In *Griffith v. Griffith*, 332 S.C. 630, 506 S.E.2d 526 (Ct.App.1998), where an award of attorney fees in a divorce action did not set forth the findings of fact on the six required factors pursuant to *Glasscock*, we inculcated:

> Our case law and court rules make clear that when a contract or statute authorizes an award of attorney's fees, the trial court must make specific findings of fact on the record for each of the required factors to be considered. Rule 26(a), SCRFC ("An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the

court's decision."); *Blumberg v. Nealco, Inc.,* 310 S.C. 492, 427 S.E.2d 659 (1993) (attorney's fees award pursuant to contract); *Atkinson v. Atkinson,* 279 S.C. 454, 309 S.E.2d 14 (Ct.App.1983) (per curiam) (attorney's fees award pursuant to divorce decree authorized by statute). Generally, if on appeal there is inadequate evidentiary support for each of the factors, the appellate court should reverse and remand so the trial court may make specific findings of fact. *Blumberg v. Nealco, Inc.,* 310 S.C. 492, 427 S.E.2d 659 (1993). However, when an order from the family court is issued in violation of Rule 26(a), SCRFC, the appellate court "may remand the matter to the trial court, **or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.**" *Holcombe v. Hardee,* 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991). *Griffith* at 646–47, 506 S.E.2d at 534–35 (emphasis added); *see also Doe v. Doe,* 370 S.C. 206, 218, 634 S.E.2d 51, 58 (Ct.App. 2006); *Badeaux v. Davis,* 337 S.C. 195, 203, 522 S.E.2d 835, 839 (Ct.App.1999).

■■■ Through this court's plenary powers of review, we find the decision to award attorney's fees is supported by the record. Neither Mother nor Kyle had the ability to pay the fee to bring this action without borrowing money from a friend. Their counsel obtained beneficial results. Whereas Father has been with his employer for many years and was currently earning $72,000 per year, Mother and Kyle were unemployed. Mother was seeking disability and Father admitted Kyle's school attendance would inhibit his ability to work. Given Mother's and Kyle's strained financial circumstances, the effect of owing the full attorney fees would more adversely affect their standard of living than it would Father's as a result of his required $2000 contribution.

The attorney's fee affidavit specifically called the family court's attention to the *Glasscock* factors:

4. [Counsel] incorporates herein Rule 407 of the South Carolina Appellate Court Rules which contains the Rules of Professional Conduct and further calls the attention of the Court to the holding of *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991), concerning the factors and criteria which should be considered

in the setting of attorney's fees. He relies upon the discretion of the Court in the determination of the amount of fees, based, among other things, upon the Court's file, the Court's knowledge of the litigation between the parties, which reflects the difficulty of the services rendered, the time necessarily expended, the result accomplished, the fact that there is no contingency of compensation in a domestic relations case, the professional standing of counsel, and fees customarily charged in this area for similar legal services.

In the case at bar, where the controversy was based on an alleged ambiguity in the Agreement, the parties' testimony regarding intent was the centerpiece of its resolution. The affidavit stated counsel for Mother and Kyle spent 21.10 hours preparing the pleadings and affidavits and readying for the hearing. Counsel provided he was admitted to the South Carolina Bar ten years earlier and had since been in private practice. Concerning his professional standing, he was an active member of the state bar and other professional legal associations. Contingency of compensation was not applicable in this domestic action. Mother and Kyle's counsel secured beneficial results for his clients. Although no indication of customary legal fees for similar services appears, the record sufficiently supports the *Glasscock* factors. Accordingly, $2000 is a reasonable award, and we find no abuse of discretion.

## CONCLUSION

The Agreement is enforceable and was intended to provide for the children's educational needs and other necessities. Under the circumstances of this case, transportation is a necessity enabling Kyle to attend classes. We rule Father must pay Kyle the sum of $800 per month, including transportation expenses of $400, for the months of January through May 2007 and September through December 2007, equating to nine months per year. Father shall do the same for 2008. After Kyle's first two years of college, Father shall apply the $21,600 balance towards Kyle's last two years, or eighteen months at a sum of $1200 per month. Father is not entitled to a credit towards the $36,000 he owes. The record provides

ample evidence to support the award of attorney fees. Accordingly, the order of the family court is

**AFFIRMED.**

HUFF and KITTREDGE, JJ., concur.